**The STATE of Ohio, Appellee,**

v.

**TROISI, Appellant.**

[Cite as *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2008–L–060.

Decided Nov. 18, 2008.

</div>

**328**

Charles E. Coulson, Lake County Prosecuting Attorney, and Teri R. Daniel, Assistant Prosecuting Attorney, for appellee.

Dominic J. Vitantonio, for appellant.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellant, Juanita M. Troisi, appeals from the judgment on conviction entered by the Lake County Court of Common Pleas, after trial by jury, on one count of trademark counterfeiting, a felony of the third degree, and one count of possession of criminal tools, a felony of the fifth degree. For the reasons set forth below, this court reverses and vacates appellant's convictions.

{¶ 2} On February 3, 2007, appellant hosted a "purse party" at a building known as the Kirtland Grange in Kirtland, Ohio. At this event, appellant offered for sale various items, such as purses, wallets, and jewelry. After receiving her invitation, Dina Halatek, one of the invitees, contacted the Kirtland Police Department about the event because she had been recently informed that the sale of items at such parties was "very criminal." Sergeant Jamie Tavano of the Kirtland Police Department initiated an investigation of the matter. During his investigation, Tavano contacted Tim Richissin, a sergeant with the Cleveland Police Department. Tavano sought Richissin's assistance because of his background as a well-known investigator of intellectual-property crimes. In addition to being a police officer, Richissin was employed as a regional director of the Professional Investigating Consulting Agency ("PICA"). According to Richissin, PICA is a private company specializing in the investigation of intellectual-property crimes such as trademark counterfeiting. With the assistance of Richissin, the investigation culminated in a raid of the premises on the day of the event. After the raid, appellant was arrested, and police seized over 1,700 purportedly counterfeit items, along with appellant's vehicle and a sum of cash from sales.

{¶ 3} Appellant was subsequently indicted on one count of criminal simulation, in violation of R.C. 2913.32(A)(4), a felony of the third degree; two counts of trademark counterfeiting, in violation of R.C. 2913.34(A)(4) and (5), felonies of the third degree; and one count of possessing criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree. Three forfeiture specifications were

attached to each count relating to the property seized, namely, the vehicle used to transport the property, the money seized from sales, and the purportedly counterfeit property itself. Prior to the commencement of trial, the trial court dismissed the criminal-simulation count and one count of trademark counterfeiting. At the close of the state's case, appellant moved for acquittal, which the trial court overruled. The jury subsequently returned verdicts of guilty on the remaining charges of trademark counterfeiting and possessing criminal tools. Appellant was sentenced to three years' imprisonment for the trademark-counterfeiting conviction and one year for the possessing-criminal-tools conviction. The sentences were ordered to be served concurrently, for a total of three years' imprisonment. Appellant now appeals.

{¶ 4} Because they are significantly related, we shall address appellant's first, second, and fourth assignments of error together. Under these assigned errors, appellant posits the following:

{¶ 5} "[1.] The trial court erred by permitting Richissin to testify concerning his 'expert' opinion that the items were 'counterfeit,' 'fake,' 'not original,' and/or 'not authentic.'

{¶ 6} "[2.] The trial court erred by denying appellant's [Criminal] Rule 29 motion.

{¶ 7} "[4.] The verdict is not sustained by sufficient evidence."

{¶ 8} We first point out that appellant's second and fourth assignments of error assert the same legal theory. Defense counsel's Crim.R. 29 motion acted to challenge the sufficiency of the state's evidence. Thus, these two separate assignments of error contest the very same issue; namely, whether the state presented adequate evidence at trial to meet its burden of proof on each element of the crimes charged. It is from this point that we shall begin our analysis.

{¶ 9} An appellate court reviewing whether the evidence was sufficient to support a criminal conviction examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the mind of the average juror of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. A reviewing court may not reweigh or reinterpret the evidence; rather, the proper inquiry is whether, after viewing the evidence most favorably to the prosecution, the jury could have found the essential elements of the crime proven beyond a reasonable doubt. Id.

{¶ 10} R.C. 2913.34, the statute governing the crime of "trademark counterfeiting" provides:

{¶ 11} "(A) No person shall knowingly do any of the following:

{¶ 12} " * * *

{¶ 13} "(4) Sell, offer for sale, or otherwise dispose of goods with the knowledge that a counterfeit mark is attached to, affixed to, or otherwise used in connection with the goods;

{¶ 14} " * * *

{¶ 15} "(F) As used in this section:

{¶ 16} "(1)(a) * * * 'counterfeit mark' means a spurious trademark or a spurious service mark that satisfies both of the following:

{¶ 17} "(i) It is identical with or substantially indistinguishable from a mark that is registered on the principal register in the United States patent and trademark office for the same goods or services as the goods or services to which or in connection with which the spurious trademark or spurious service mark is attached, affixed, or otherwise used * * *.

{¶ 18} "(ii) Its use is likely to cause confusion or mistake or to deceive other persons."

{¶ 19} With the statutory definition in mind, the state was required to prove that appellant:

{¶ 20} (1) Knowingly;

{¶ 21} (2) sold, offered for sale, or otherwise disposed of goods in her possession;

{¶ 22} (3) knowing that a spurious trademark was affixed to or otherwise used in connection with the goods; and that

{¶ 23} (4) the spurious trademark:

{¶ 24} (a) is identical with or substantially indistinguishable from a mark that is registered on the principal register in the United States patent and trademark office for the particular purse, jewelry or item,

{¶ 25} *and*

{¶ 26} (b) is likely to cause confusion or mistake or to deceive other persons.

{¶ 27} Although appellant does not concede that the state met its burden on elements (1) through (3), she does not take specific issue with the state's proof on these elements. Rather, appellant's challenge is directed at the manner in which the state attempted to prove element (4)(a). Appellant alleges that the testimony of Richissin, the state's intellectual-property counterfeiting expert, by itself, was inadequate to prove that the subject goods bore a "spurious" or "counterfeit" mark as defined by statute. We agree with appellant's argument.

{¶ 28} At trial, Richissin testified as an intellectual-property-crime expert for the state. He testified that he is a sergeant with the Cleveland Police

Department who principally investigates crimes involving intellectual property. Richissin testified that he first became involved in investigating intellectual-property crimes in 2002 and has attended "maybe thirty training sessions" since that time. Richissin is a regional director for PICA, a private investigation firm retained by international fashion designers for the purpose of investigating trademark counterfeiting. Richissin testified that PICA investigates allegations of trademark counterfeiting (as well as other illicit activities related to intellectual property) and, once it completes an investigation, it submits its findings to law enforcement for purposes of prosecution. According to Richissin, PICA clients include Gucci, Prada, Coach, Dior, Fendi, Louis Vuitton, Dooney and Bourke, Tiffany, Kate Spade, Liz Claiborne, Chanel, and Versace. Each of these companies provides PICA investigators with training regarding how to identify inauthentic items or "knock-offs" bearing their trademarks.

{¶ 29} Over defense objection, Richissin defined "trademark counterfeiting" as "[c]opying the registered trademark of a property owner." He further testified, again over objection, that he is "one of the more knowledgeable people in Northeast Ohio about trademark counterfeiting." According to Richissin, he is able to distinguish counterfeit goods from authentic goods due to his training and experience in this area.

{¶ 30} During direct examination, Richissin was provided with certain examples of goods seized from appellant and asked to identify whether the items were, in his estimation, counterfeit. He was also asked to explain how he arrived at his conclusions. After inspecting what was purported to be a Coach bag, a Prada purse, a Louis Vuitton purse, a Chanel purse, a Gucci purse, a Burberry purse, a Fendi purse, a Kate Spade purse, and a piece of Tiffany jewelry, Richissin concluded, over strenuous objections by defense counsel, that they all were knock-offs and therefore counterfeit. At the conclusion of direct examination, Richissin testified, again over objection, that the trademarks on the merchandise he inspected were "identical or substantially indistinguishable from the genuine trademark[s]."

{¶ 31} During the defense's case-in-chief, defense counsel called Richissin as a witness. During defense counsel's direct examination of Richissin, the witness testified that he had never obtained a record from the United States patent and trademark office. He further testified that he had never personally viewed the trademarks from the principal register of any items that he testified were counterfeit. After the conclusion of Richissin's testimony, defense counsel rested.

{¶ 32} The state submitted neither certified copies of the authentic trademarks of the companies whose marks were at issue nor any other evidence of the actual trademarks registered in the principal register of the United States patent and trademark office. In essence, aside from Richissin's assurances that the goods

were counterfeit (as defined by Richissin himself) the record is devoid of *any evidence* from which the jury could conclude that the items seized bore a trademark "identical with or substantially indistinguishable from a mark that is registered on the principal register in the United States patent and trademark office," as required by R.C. 2913.34(F)(1)(a)(i). R.C. 2913.34 specifically requires the state to prove, beyond a reasonable doubt, that a "counterfeit mark" was attached or affixed to the goods in question. The phrase "counterfeit mark" is precisely defined in the statute and requires proof that the mark be "identical with or substantially indistinguishable from" the marks registered with the United States patent and trademark office. Without evidence that the goods bore a counterfeit mark as defined in the law, there can be no violation of the trademark-counterfeiting statute.

{¶ 33} Although Richissin testified that the items he inspected, each of which was affixed with a recognizable trademark emblem of some kind, were inauthentic based upon multiple factors, it is merely from these observations that he was able to conclude that the items represented instances of "trademark counterfeiting." Given the statute, the supportive testimony for his conclusions is basically insufficient to meet the statutory definition of the crime of trademark counterfeiting set forth under R.C. 2913.34.

{¶ 34} In particular, Richissin's definition of "trademark counterfeiting" (i.e., "copying the registered trademark of a property owner") is overly broad and does not embrace the precise legal definition of "trademark counterfeiting." Moreover, it appears that the state, perhaps inadvertently, blurred the foregoing distinction by repeatedly asking Richissin, in light of *his* conception of trademark counterfeiting, whether a given item was "authentic or counterfeit." Such questions illustrate that the state was attempting to meet its burden by using an informal or colloquial understanding of "trademark counterfeiting," as opposed to the specific statutory definition.

{¶ 35} We recognize that Evid.R. 704 permits an expert to provide testimony by way of opinion or inference that embraces the ultimate issue for the jury. However, simply because Richissin could so testify does not imply that his testimony, by itself, was adequate to meet the state's burden. To the contrary, Richissin's testimony was premised upon an essentially subjective or, at best, a nonlegal definition of the phrase "trademark counterfeiting." We acknowledge that Richissin did, on direct examination, draw the blank conclusion that the items he inspected were "either identical or substantially indistinguishable from the genuine trademark." However, Richissin later testified that he had never seen the genuine trademarks as they appear on the principal register in the United States patent and trademark office. Because he had never viewed the

genuine trademarks and the state failed to submit some evidence of those trademarks, Richissin's initial conclusion completely lacks evidentiary support.

{¶ 36} Because there was no evidence presented that would allow the jury to conclude that the goods bore a counterfeit mark that was identical with or substantially indistinguishable from a registered trademark, the jury was allowed to render a verdict based only upon Richissin's nonlegal conception of this ultimate issue. Irrespective of the propriety of the jury instructions, the jury heard no evidence regarding the first prong of the definition of a "counterfeit mark." Hence, under these circumstances, Richissin's testimony was both misleading and legally insufficient to prove the ultimate issue that his testimony embraced.

{¶ 37} Our review of the body of Ohio law in this area reveals that no court has addressed the basic elements of the crime of "trademark counterfeiting." Accordingly, our construction and analysis of this issue is a matter of first impression. In our view, the statutory elements of the crime of "trademark counterfeiting" are unambiguously set forth under R.C. 2913.34. The statute *requires* the state to prove that the trademark affixed to the purported knock-off merchandise is identical with or substantially indistinguishable from that which is properly registered with the United States trademark and patent office. This is a specific, express element of the crime for which appellant was prosecuted. However, as outlined above, the state failed to offer any substantive evidence to prove this element of the crime. We therefore hold that this "gap" in the evidentiary chain necessitates a reversal of appellant's conviction for trademark counterfeiting.

{¶ 38} While the foregoing analysis is dispositive of the instant case, we shall still address appellant's first assignment of error because it contemplates an issue that is capable of repetition yet evading review. Under her first assignment of error, appellant asserts that the trial court erred in allowing Richissin's testimony because it invaded the province of the jury, effectively denying her due process of law. Appellant contends that Richissin usurped the function of the jury when, without any evidence that the goods at issue possessed marks that are "identical with or substantially indistinguishable from" the mark on the principal registry of the United States patent and trademark office, he testified as an expert that the goods at issue were "counterfeit," "fake," "not original," and/or "not authentic." We agree.

{¶ 39} As discussed above, Richissin was allowed to testify that "trademark counterfeiting" means "[c]opying the registered trademark of a property owner." Although this definition may be sufficient in Richissin's business of intellectual-property-crime investigation, the statutory definition differs significantly from

this open-ended conception. However, in light of this definition, Richissin was permitted to testify, over defense counsel's objection, that the items at issue were counterfeit, without any substantive evidence that the marks on the items were counterfeit pursuant to R.C. 2913.34(F)(1)(a)(1). Because the state introduced no evidence of the marks as they appear on the principal registry, the jury was unable to measure Richissin's testimony against the proper statutory definition set forth under R.C. 2913.34(F)(1)(a)(i). By allowing him to draw his conclusion without introducing evidence of the marks as they exist on the principal registry, the issue of whether the marks were counterfeit was taken from the jury. Therefore, Richissin's testimony, which carried with it an air of authority beyond that of general lay testimony, acted to usurp the jury's role.

{¶ 40} In light of this analysis, an ancillary, yet crucial point deserves clarification. Although the manner in which the state chose to prove its case is legally problematic, Richissin's testimony was not necessarily improper. Rather, it is this court's position that given the course of *these* proceedings, Richissin's testimony was improper because it was introduced without a proper foundation and/or qualification.

{¶ 41} To explain, it is patent that Richissin's definition of "trademark counterfeiting" differed significantly from the statutory elements requiring proof of "trademark counterfeiting" under Ohio law. As these definitions differed, the testimony could have been properly introduced had the state laid a foundation to establish this distinction. Introducing this distinction to the jury might have benefitted the state because, in doing so, it might have triggered the introduction of evidence relating to the actual trademarks of the goods at issue as they appear in the principal registry of the United States patent and trademark office. In so doing, the jury would have had the opportunity to weigh Richissin's conclusions against the actual trademark emblems and determine, for itself, whether the marks were counterfeit pursuant to the statute. However, without laying this foundation, the jury was not only confused as to the proper standard, it was misled into believing that Richissin's testimony sufficed to establish that the marks at issue were counterfeit. This ultimate conclusion was a factual issue to be determined by the jury based upon evidence before it. As emphasized throughout our analysis, such defects in the state's strategy and proof are fatal and, as a result, the matter must be reversed.

{¶ 42} Finally, although appellant does not expressly challenge her conviction for possession of criminal tools in her brief, upholding the verdict due to such an omission would be plain error. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A defendant's substantial rights are affected when the error at issue has an impact on the outcome of the trial. *State*

*v. Stanley*, 11th Dist. No. 2007–P–0104, 2008-Ohio-3258, 2008 WL 2582641, at ¶ 29.

{¶ 43} Here, appellant's indictment alleged that she possessed criminal tools, namely, "totes/vehicles, with the purpose to use [them] criminally." The indictment further specified: "The circumstances indicate that the substance, device, instrument or article involved was intended for use in the commission of a felony, to-wit: * * * Trademark Counterfeiting."

{¶ 44} The specification charging appellant with possessing criminal tools "intended for use in the commission of a felony" raised the offense from a first-degree misdemeanor to a felony of the fifth degree. See R.C. 2923.24(C). Because appellant was charged with a felony specification for possession of criminal tools, the specification became an additional element of the offense that the state was required to prove beyond a reasonable doubt. *State v. Davis*, 6th Dist. No. WD–07–031, 2008-Ohio-3574, 2008 WL 2779293, at ¶ 15; see also *State v. Brown* (1993), 85 Ohio App.3d 716, 723, 621 N.E.2d 447.

{¶ 45} A review of the evidence demonstrates that the state failed to prove that appellant possessed the "tools" at issue with the purpose of committing the felony of trademark counterfeiting. "Purposely" is defined in R.C. 2901.22(A) as follows:

{¶ 46} "A person acts purposely when it is [her] specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

{¶ 47} The Supreme Court of Ohio has stated that " 'purpose' is the highest of the culpable mental states, placing on the prosecution the heaviest possible burden in establishing *mens rea*. By including this scienter requirement [in the statute governing the crime of possessing criminal tools], the General Assembly has required both control of the article and the specific intention to use the article to commit a crime." (Emphasis sic.) *State v. McDonald* (1987), 31 Ohio St.3d 47, 49, 31 OBR 155, 509 N.E.2d 57.

{¶ 48} Because there was insufficient evidence of the crime of "trademark counterfeiting," there is likewise insufficient evidence to support appellant's conviction on the charge of possessing criminal tools. Because the state failed to submit evidence that the marks were counterfeit as defined by statute, it necessarily follows that it could not prove appellant knowingly sold goods affixed with counterfeit marks, i.e., it could not prove she engaged in "trademark counterfeiting." Without evidence that appellant committed or was aware she was committing the principal crime, one cannot reasonably infer that appellant acted with the specific intent to commit the principal crime. Put differently,

without evidence that the marks at issue were "identical to or substantially indistinguishable" from the actual trademarks, it is not possible to conclude, beyond a reasonable doubt, that appellant acted with criminal purpose, i.e., the specific intent to commit the felony of trademark counterfeiting, in using the "tools" at issue. One cannot infer a criminal purpose without sufficient evidence that the defendant had the specific intent to commit an actual crime prohibited by the Ohio Revised Code. Although appellant used the "tools" to transport the suspect goods, there is insufficient evidence to support the conclusion that she did so with the specific intent to engage in trademark counterfeiting in violation of R.C. 2913.34. Appellant's conviction for possessing criminal tools was plain error and is accordingly reversed and vacated.

{¶ 49} Appellant's first, second, and fourth assignments of error have merit.

{¶ 50} Appellant's third and fifth assignments of error provide:

{¶ 51} "[3.] The verdict is against the manifest weight of the evidence.

{¶ 52} "[5.] The statute is void for vagueness and the trial court erred in overruling appellant's motion for a new trial on this basis."[1]

{¶ 53} Because our analysis above is dispositive of the matter, appellant's third and fifth assigned errors are moot.

{¶ 54} For the reasons discussed herein, appellant's convictions for trademark counterfeiting and possession of criminal tools are reversed, and the judgment of conviction entered by the Lake County Court of Common Pleas is hereby vacated.

Judgment accordingly.

O'TOOLE, J., concurs.

CANNON, J., dissents.

TIMOTHY P. CANNON, Judge, dissenting.

{¶ 55} I respectfully dissent from the majority's opinion.

{¶ 56} First, I believe that as an expert witness for the state, Sergeant Richissin was permitted to testify as to the identity of the companies' trademarks. He testified that he had been trained by representatives from Gucci, Prada,

---

1. Moreover, it is well settled that a court will not pass upon the constitutionality of a legislative enactment unless or until it becomes necessary to do so in order to dispose of the case before it. See, e.g., *Am. Cancer Soc. v. Dayton* (1953), 160 Ohio St. 114, 121, 51 O.O. 32, 114 N.E.2d 219. Because our substantive analysis of appellant's first, second, and fourth assigned errors disposed of the case, addressing the constitutionality of the statute is clearly unnecessary.

Coach, Dior, Louis Vuitton, Fendi, Dooney and Bourke, Tiffany, Burberry, Liz Claiborne, Kate Spade, Chanel, and Versace. Also, he testified that he was familiar with the trademarks of each of these companies and that those trademarks are registered in the United States Patent and Trademark Office.

{¶ 57} Further, I believe that the state submitted sufficient evidence to sustain Troisi's convictions.

{¶ 58} Courts have held "that 'the purpose of trademark law is not to guarantee genuine trademarks but to guarantee that every item sold under a trademark is the genuine trademarked product, not a substitute.'" *United States v. Petrosian* (C.A.9, 1997), 126 F.3d 1232, 1234, fn. 2, quoting *Gen. Elec. Co. v. Speicher* (C.A.7, 1989), 877 F.2d 531, 534.

{¶ 59} There is a federal statute analogous to R.C. 2913.34. See Section 2320, Title 18, U.S.Code. This statute also defines a "counterfeit mark" as a "spurious mark * * * that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office." Section 2320(e)(1), Title 18, U.S.Code. Regarding this statute, the Eleventh Circuit Court of Appeals has held:

{¶ 60} "The statute does not specify the means by which the Government may establish that the marks were 'identical or substantially indistinguishable.' There is no support for the proposition that in all cases, the trier of fact must determine indistinguishability based on the marks as affixed to the actual goods. Nor is there a requirement that the actual trademark owner testify in a criminal trial, or that the agent who conducted the investigation and seizure of the counterfeit merchandise be qualified as an expert in the particular type of product. In this case, the jury had been shown registered designs of the trademarks for each cigar, as well as various cigar labels or bands produced by authorized licensees. The jury therefore had a valid basis for comparison in determining whether the designs were 'identical or substantially identical [sic].'" *United States v. Guerra* (C.A.11, 2002), 293 F.3d 1279, 1288.

{¶ 61} Thus, in any given case, there are a variety of ways for the state to meet its burden of demonstrating that the marks used on the products were identical with or substantially indistinguishable from registered marks. I agree that one of the ways to do this is to actually introduce certified copies of the trademarks in question. This would be the paramount evidence to prove the state's case. However, another way to meet the state's burden would be to introduce authentic products and have a representative from the company identify the items as authentic, thus providing the jury with a comparison of the two marks. Finally, I believe that the state's evidence in this case, an expert opinion regarding the identity of the actual trademarks, combined with the defendant's confession, was sufficient.

{¶ 62} In the case sub judice, Sergeant Richissin testified that based on his education, training, and experience, he is able to identify trademarks. He identified certain marks on the counterfeit purses as being purported trademarks from certain companies, such as Louis Vuitton. He also testified that certain marks, such as the one appearing on a purported Coach bag, were "registered on the principal register in the United States Patent and Trademark Office." Moreover, Sergeant Richissin testified that the marks on the merchandise seized from Troisi "were either identical or substantially indistinguishable from the genuine trademark[s]."

{¶ 63} In addition to Sergeant Richissin's expert testimony, the state presented evidence that Troisi *admitted* that the merchandise was counterfeit. Troisi gave a written statement to the police, which was admitted at trial. In her statement, Troisi states that she "had copy bags," that she knew "it was error to sell them," and that she was "willing to give [the officers] the names of [her] suppliers in New York." In addition, the officer taking her statement asked: "Did you know the merchandise you were selling (and brought) to 10350 Chillicothe Rd. was counterfeit designer merchandise?" Troisi responded in her own handwriting: "Yes. I knew that the purses and wallets were not authentic."

{¶ 64} Also, Sergeant Richissin executed a controlled buy from Troisi. He testified that he had the following conversation with her:

{¶ 65} "Q. Was there any discussion prior to your purchase?

{¶ 66} "A. We tried to get [Troisi] down on the price. We asked her if we could purchase the purse for forty dollars, rather than fifty dollars.

{¶ 67} "Q. And did she have a response for you?

{¶ 68} "A. She said to me, Do you know [how] much it would cost to buy that purse if it was real."

{¶ 69} In her written statement, Troisi admitted that the merchandise was counterfeit. In addition, during the controlled buy, she directly informed Sergeant Richissin that the merchandise was not real.

{¶ 70} Through the testimony of Sergeant Richissin and Troisi's confession, the state presented evidence that when viewed in totality and in a light most favorable to the state was sufficient for a trier-of-fact to conclude that Troisi had committed the offense of trademark counterfeiting.

{¶ 71} The judgment of the trial court should be affirmed.

{¶ 72} Finally, I disagree with the remedy imposed by the majority.

{¶ 73} When conducting a sufficiency-of-the-evidence analysis, this court is to look at the actual evidence admitted at trial, both admissible and inadmissible. See *State v. Jeffries,* 11th Dist. No. 2005–L–057, 2007-Ohio-3366, 2007 WL

1881314, at ¶ 100, citing *Lockhart v. Nelson* (1988), 488 U.S. 33, 34, 109 S.Ct. 285, 102 L.Ed.2d 265. (*State v. Jeffries* overruled on other grounds in *State v. Jeffries*, 119 Ohio St.3d 265, 2008-Ohio-3865, 893 N.E.2d 487.) In her brief, Troisi asserts that "without the testimony of Richissin on this issue, the verdict is not supported by sufficient evidence." As such, Troisi apparently concedes that *with Sergeant Richissin's testimony*, the state presented sufficient evidence to support her convictions.

{¶ 74} If the majority concludes that Sergeant Richissin's testimony should not have been admitted because a proper foundation was not provided, then what occurred in this matter is an error in the admission of evidence. As such, the proper remedy is to reverse Troisi's convictions and remand the matter for a new trial. See, e.g., *State v. Papalevich* (Nov. 13, 2001), 10th Dist. No. 01AP–264, 2001 WL 1403110, at *10. However, the "inadmissible" evidence should still be considered when conducting a sufficiency-of-the-evidence analysis. *State v. Jeffries*, 2007-Ohio-3366, 2007 WL 1881314, at ¶ 100. This is because, had the trial court sustained Troisi's objections to Sergeant Richissin's testimony, the state would have had the opportunity to submit other evidence to demonstrate that the marks used on the products in this case were identical with or substantially indistinguishable from registered marks.