Lundberg Stratton, J.,
dissenting.
{¶ 13} I respectfully dissent because I believe that the state presented sufficient evidence to support Troisi’s conviction for selling counterfeit goods pursuant to R.C. 2913.34(A)(4).
{¶ 14} It is a crime to offer for sale and to sell goods with knowledge that a counterfeit mark is attached to or otherwise used in connection with those goods. R.C. 2913.34(A)(4). “ ‘[Counterfeit mark’ means a spurious trademark or a spurious service mark that satisfies both of the following:
{¶ 15} “It is identical with or substantially indistinguishable from a mark that is registered on the principal register in the United States patent and trademark office for the same goods or services as the goods or services to which or in connection with which the spurious trademark or spurious service mark is attached, affixed, or otherwise used * * *,” and “[i]ts use is likely to cause confusion or mistake or to deceive other persons.” (Emphasis added.) R.C. 2913.34(F)(l)(a)(i) and (ii).
{¶ 16} A jury convicted Troisi of one count of trademark counterfeiting under R.C. 2913.34(A)(4). However, the court of appeals held that the state provided insufficient evidence that the spurious marks attached to the counterfeit goods were identical with or substantially indistinguishable from the authentic trademarks that are registered with the United States trademark and patent office, and therefore, the state’s expert was not qualified to testify on that issue. State *408 v. Troisi, 179 Ohio App.3d 326, 2008-Ohio-6062, 901 N.E.2d 856, ¶ 37, 40. The court of appeals suggested that the state’s expert would have been qualified to testify on this matter if he had personally examined trademarks as they appeared on the principal register. Id. at ¶ 31.
{¶ 17} The majority affirms the court of appeals’ judgment, holding that there was insufficient evidence to show that the trademarks at issue were registered because Richissin had never personally viewed or obtained any trademark records. Majority opinion at ¶ 8. The majority further states that “Richissin’s testimony proved, at best, that the seized items bore marks that were ‘identical [to] or substantially indistinguishable’ from marks provided to him during his training, but not identical to or indistinguishable from any mark proven to be registered as required by the statute.” Id. Finally, the majority determines that its decision makes moot the issue whether the appellate court’s decision “improperly limited the prosecutor to introducing certified copies of trademark registrations to prove the ‘identical or substantially indistinguishable’ element of the crime.” Id. at ¶ 11.
Expert Testimony
{¶ 18} In essence, the majority holds that Richissin’s training is insufficient to qualify him as an expert to testify as to whether the trademarks at issue herein were registered or whether they were “identical with or substantially indistinguishable from” the marks on the seized goods because he had not personally viewed the registered trademarks. However, the majority cites no law to support its conclusion that trademark-counterfeiting cases can be proved only by direct evidence or personal observation of the trademark, and R.C. 2913.34 imposes no such limitation. I believe Richissin’s training and experience were sufficient to permit him to provide expert testimony that the trademarks in this case were registered and that they were identical to or substantially indistinguishable from the marks on the goods seized from Troisi.
{¶ 19} There are few Ohio cases that interpret R.C. 2913.34 and none that address the issue that is currently before this court. However, “Ohio’s trademark counterfeiting statute is substantially similar to the federal trademark counterfeiting statute, 18 U.S.C. § 2320(a), which prohibits someone from intentionally trafficking or attempting to traffic in goods or services and knowingly using a counterfeit mark on or in connection with such goods or services.” State v. Christley, 8th Dist. No. 92546, 2009-Ohio-6635, 2009 WL 4856800, ¶ 11. Consequently, federal law is persuasive in interpreting R.C. 2913.34.
{¶ 20} While personal observation or direct evidence of a trademark might be the best evidence in a trademark-counterfeiting case, it is not the only means of proving that a trademark is registered. Nor is it the only means of proving that a counterfeit mark is identical to or substantially indistinguishable from an authentic mark. See United States v. Guerra (2002), 293 F.3d 1279, 1288 *409 (“[Federal trademark law] does not specify the means by which the Government may establish that the marks were ‘identical or substantially indistinguishable’ ”); United States v. Xu (Dec. 4, 2008), S.D.Tex. No. H-07-362, 2008 WL 5122125, citing United States v. Park (C.A.9, 2006), 164 Fed.Appx. 584, 585; United States v. DeFreitas (S.D.N.Y.2000), 92 F.Supp.2d 272, 278 (while the government usually offers a certificate of registration to prove that a mark is registered, “registration can be proved by other types of evidence”).
{¶ 21} “Evid.R. 702(B) provides that a witness may qualify as an expert by reason of his or her specialized knowledge, skill, experience, training, or education. Neither special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function.” State v. Hartman (2001), 93 Ohio St.3d 274, 285, 754 N.E.2d 1150, citing State v. Baston (1999), 85 Ohio St.3d 418, 423, 709 N.E.2d 128; State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191, 616 N.E.2d 909.
{¶ 22} A handbook on intellectual-property crimes published by the United States Department of Justice states that “[w]hen trying to determine which trademarks the defendant infringed, prosecutors and agents should consult with the victim. Although the government itself can search for trademarks on the United States Patent and Trademark Office’s website, these searches can be cumbersome. Given the range of perceptible elements that can be registered as marks — witness the color pink for Owens-Corning fiberglass, the NBC chime, the Burberry plaid, and the shape of the Coca-Cola bottle (respectively U.S. Trademark Reg. Nos. 1439132 and 2380742, 0916522, 2022789, and 1057884) — the victim is best suited to identify which elements were registered as marks and which may have been counterfeited.” (Emphasis added.) United States Department of Justice, Prosecuting Intellectual Property Crimes (3d Ed.2006) 100 (available at http://mvw.usdoj/criminal/cybercrime/ipmanual/ipma2006.pdf). Thus, trademark owners would also be best suited to instruct others on differentiating between authentic and counterfeit marks and products.
{¶ 23} In the instant case, trademark owners, including Gucci, Prada, Coach, Dior, Fendi, Dooney & Bourke, Tiffany, Burberry, Chanel, Kate Spade, Louis Vuitton, and Versace, trained Richissin to recognize their registered trademarks. The training also taught Richissin how to recognize counterfeit goods from authentic trademarked goods by looking for “red-flag” indicators with respect to the product’s security tags, logos, and packaging. Since 2002, Richissin has attended approximately 30 such training sessions and receives updates regarding product changes by e-mail. Richissin also testified that he has participated in investigating over 50 trademark-counterfeiting cases in the past several years.
*410 {¶ 24} Because of Richissin’s training and experience, I would find that he was qualified to testify as an expert in trademark counterfeiting.
Evidence
{¶ 25} Richissin testified that through his training, he learned that the Gucci, Prada, Coach, Dior, Fendi, Dooney & Bourke, Tiffany, Burberry, Chanel, Kate Spade, Louis Vuitton, and Versace trademarks were registered on the principal register in the United States Patent and Trademark Office. He also testified that the goods offered by the state as evidence were represented as being made by these registered-trademark owners.
{¶ 26} Richissin further testified that these goods had marks affixed to them that were identical or substantially indistinguishable from authentic, registered trademarks. For example, he testified that a mark appearing on a purse seized from Troisi was “identical” to the registered Coach trademark. Yet, he testified, the purse was not an authentic Coach purse, because it had plastic handles, which authentic Coach purses do not have. Richissin also testified that a purported Tiffany trademark was not affixed to a piece of jewelry in the proper location to be an authentic Tiffany trademark, and consequently, the mark was counterfeit, as was the jewelry.
{¶ 27} Distinguishing such fine details, especially where the counterfeit marks are almost indistinguishable from authentic marks, requires extensive training and experience of an expert because it is beyond the knowledge of the average juror. In other words, the more substantially indistinguishable the counterfeit trademark is, the more important it is to have the expert explain the differences between authentic goods and counterfeit goods.
{¶ 28} Comparison of a counterfeit mark to an authentic trademark by a layman may be of little value in reaching the ultimate determination whether goods are counterfeit. The majority gives far too much weight to this single factor.
{¶ 29} Thus, I would hold that Richissin’s testimony aided the jury in determining whether Troisi engaged in trademark counterfeiting. See State v. Hartman (2001), 93 Ohio St.3d 274, 285, 754 N.E.2d 1150.
(¶ 30} The record also contains statements from Troisi admitting that the goods seized were counterfeit. For example, Richissin testified that during his investigation in this case, he attempted to buy a purse from Troisi. The prosecutor asked Richissin the following questions regarding his purchase of the purse from Troisi:
{¶ 31} “Q. Was there any discussion prior to your purchase?
{¶ 32} “A. We tried to get [Troisi] down on the price. We asked her if we could purchase the purse for forty dollars, rather than fifty dollars.
*411 {¶ 33} “Q. And did she have a response for you?
{¶ 34} “A. She said to me, Do you know [how] much it would cost to buy that purse if it was real.”
{¶ 35} Moreover, in her statement to police, Troisi stated that she “had copy bags” and knew that “it was error to sell them.” She also stated that she “knew that the purses and wallets were not authentic.”
{¶ 36} Troisi’s admissions regarding her knowledge of the counterfeit nature of the goods are totally ignored by the majority. I believe that Troisi’s testimony, along with the seized goods and Richissin’s testimony, establishes her guilt beyond a reasonable doubt.
Conclusion
{¶ 37} Viewing the evidence in a light most favorable to the state, I would find that there is sufficient evidence to support Troisi’s conviction for trademark counterfeiting. Accordingly, I would reverse the court of appeals judgment and reinstate the jury’s verdict.
O’Connor, J., concurs in the foregoing opinion.