[Cite as *State v. Pulvino*, 2016-Ohio-1589.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-P-0056** |
| ZACHARY T. PULVINO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas.
Case No. 2014 CR 00718.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul M. Grant*, 209 South Main Street, Eighth Floor, Suite 3, Akron, OH 44308 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} After a trial by jury, the Portage County Court of Common Pleas convicted appellant, Zachary T. Pulvino, of felonious assault. Appellant now appeals from this judgment. At issue is whether the verdict was supported by both sufficient evidence and the manifest weight of the evidence. We affirm the trial court's judgment.

{¶2} On September 26, 2014, the victim, Thene Baker, along with several friends, attended a music festival at Nelson Ledges Quarry in Portage County, Ohio.

The group set up tents to spend the night. Baker brought his Toyota Camry for fellow campers to spray paint as a community art project. Baker prepped the vehicle by taping off the windows, wheel rims, and mirrors. Throughout the day, people spray painted the vehicle. The painting of the vehicle went into the early-morning hours of September 27. At approximately 1:00 a.m., appellant, who was both highly agitated and intoxicated, interrupted the group.

{¶3} Appellant approached the vehicle, and Baker's friend, Bradley Schwartz, offered him an opportunity to paint the car. Appellant kicked the vehicle and advised Schwartz he "was not part of it." Appellant began removing the protective covering from the windows and insisted the vehicle belonged to him. Baker and Schwartz assured appellant the vehicle was not his and again invited him to participate in the art project. Appellant subsequently warned the men he would "kick the shit" out of anyone who stood in his way.

{¶4} An unknown, larger individual who was painting the vehicle emerged to assist Baker and Schwartz. This so-called "Good Samaritan" advised appellant to leave. Appellant aggressively approached the "Good Samaritan," "got in his face," and began threatening him. The two men "squared up" on one another preparing to fight. Baker intervened, stepping between the two, and begged them to stop. Recognizing the men were not responding to his pleas, Baker began to back away. As Baker did so, however, appellant hit him with a spinning back fist strike. Baker collapsed, and the "Good Samaritan," with the assistance of other, unknown campers, immediately tackled appellant.

2

{¶5}   The force of the blow sustained by Baker was so powerful that he "felt [his] face shatter."  As he stood up, he was disoriented and blood was pouring from his nose and eye.  Baker quickly located his brother who drove him to the medical tent.

{¶6}   After appellant was tackled, park security quickly arrived and broke up the scuffle.  Portage County Sheriff's Deputy William Tench was dispatched, along with another officer, to the scene of the assault.  When the deputy arrived, appellant was situated at a neighboring campsite, sitting near a fire.  Schwartz, who remained near the scene, identified appellant as the assailant.

{¶7}   The deputy attempted to speak with appellant.  Appellant, who was noticeably intoxicated, denied striking Baker, but was unresponsive to Deputy Tench's additional questions about the incident.  Deputy Tench attempted to locate and speak with other potential witnesses.  No other witness, including the nameless "Good Samaritan," could be found or came forward.  Based upon Schwartz's and Baker's accounts of the assault, however, Deputy Tench arrested appellant.

{¶8}   Baker was ultimately diagnosed with fractures on each side of his nose, multiple fractures to his right eye socket, fractures to his cheek bone, an air pocket near his brain, and a severe concussion.  The injuries required various surgeries and a series of antibiotic injections to prevent a brain infection.  His medical bills eventually totaled nearly $80,000.

{¶9}   Appellant was charged, via indictment, with felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree.  Appellant pleaded not guilty to the charge.  After a trial by jury, he was convicted and sentenced to five-years

3

imprisonment. He was also ordered to pay Baker $79,774 in restitution for his medical bills. This appeal follows.

{¶10} Appellant assigns the following two errors, which we shall address together, for our review:

> [1.] The trial court erred as a matter of law in denying Pulvino's Crim.R. 29 motion because the state failed to establish on the [recored] sufficient evidence to support the charges levied against Pulvino in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

> [2.] Pulvino's convictions are against the manifest weight of the evidence possession [sic] in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

{¶11} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.)

{¶12} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-15 (Dec. 23, 1994).

4

{¶13} Appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(1). That subsection provides: "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * * [.]"

{¶14} Under his assignments of error, appellant does not dispute Baker suffered serious physical harm as a result of the assault. Instead, appellant contends the state failed to produce sufficient, credible evidence to establish appellant was the actual assailant. He further asserts that, even if the state overcame the issue of identity, the state failed to produce sufficient, credible evidence that appellant knowingly caused serious physical harm. We disagree.

{¶15} With respect to the issue of identity, appellant emphasizes that Schwartz's statement did not completely match appellant's physical appearance. In particular, Schwartz described the assailant as approximately 5'10" without facial hair. Appellant, however, is 6'2" and on the night of the assault appellant had hair, while minimal, on his chin/jaw line. Appellant further notes the witnesses had been drinking and smoking marijuana on the night in question, which would arguably compromise their ability to identify the attacker.

{¶16} First, both Schwartz and Baker testified they were 100 percent certain appellant was the individual who disrupted their campsite. And, even though Baker did not see the strike, both he and Schwartz had enough time to observe the interloper prior to the assault. Moreover, Schwartz specifically testified he witnessed appellant strike Baker with a "big, giant spinning back fist." The foregoing testimony, unto itself, provided adequate, persuasive evidence to sustain the state's burden on the issue of identity.

**{¶17}** Moreover, even though Schwartz's statement did not capture an entirely accurate description of appellant, he testified that his description involved an approximation of the individual he witnessed attack Baker. Schwartz, who is 5'10" testified that he knew the attacker was not shorter than him, but, because he was not face-to-face with the individual, he could not specifically judge his exact height. Also, Baker, who is 5'4", would look small when compared with most adult males. Given this explanation, Schwartz's under-estimation of appellant's height does not weaken his eventual identification.

**{¶18}** Schwartz further testified that he did not notice any facial hair on the attacker. He also noted that the hair appellant wore on his face was so sparse he did not consider the growth "facial hair." In his estimation, "facial hair" suggested some form of a "mustache, goatee, beard, [or] chops." Appellant had no such hair growth on his face on the night of the assault.

**{¶19}** With the foregoing in mind, we hold there was sufficient evidence adduced by the prosecution to prove appellant was the assailant; and this conclusion was consistent with the weight of the evidence.

**{¶20}** Next, appellant argues the state failed to establish and prove appellant acted knowingly in striking Baker. Appellant asserts that the evidence simply shows that appellant was winding up to strike the "Good Samaritan" when he accidentally struck Baker. Schwartz testified that Baker had stepped away from the potential affray before he was struck. Accordingly, appellant concludes, the state failed to produce sufficient evidence that he knowingly struck Baker, and even if it met this burden, that the jury clearly lost its way when it found appellant guilty of felonious assault.

6

{¶21} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "The legal concept of 'knowingly' incorporates the scienter requirement that one ought to know one's actions will 'probably cause certain results.' The concept of reasonable probability literally embraces the concept of foreseeability." *State v. Barker*, 11th Dist. Portage No. 2010-P-0044, 2012-Ohio-522, ¶114.

{¶22} Prior to the assault, appellant was expressly threatening individuals at the camp site with violence, and when the "Good Samaritan" accepted his invitation to fight, appellant quickly responded by stepping into a fighting posture. According to Schwartz, appellant, while posturing, was "eyeballing around * * * as if somebody was going to jump him." It was at this point, Baker attempted to break up the fight. When Baker withdrew, he was behind appellant. Appellant promptly executed the spinning back fist that struck Baker squarely on the side of the face.

{¶23} Appellant, by using the "spinning back fist" technique within striking distance of either Baker or the "Good Samaritan" should have known his action would cause serious physical harm to whomever the blow struck. Schwartz's testimony that appellant was looking around while circling with the "Good Samaritan" demonstrates he was aware of his surroundings. From this, it is reasonable to conclude appellant was aware of Baker's position when he struck Baker.

{¶24} It is worth pointing out that appellant's purpose, even if it was to strike the "Good Samaritan," is irrelevant. The facts of the assault, testified to by Schwartz,

7

provided a sufficient, credible basis for the jury to conclude, beyond a reasonable doubt, appellant acted "knowingly" when he threw the spinning back fist which struck Baker.

{¶25} Appellant's two assignments of error lack merit.

{¶26} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas, convicting appellant of felonious assault, is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.