[Cite as *State v. Petromilli*, 2017-Ohio-1511.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-045** |
| DECIO R. PETROMILLI, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000510.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Matthew C. Bangerter,* P.O. Box 148, Mentor, OH 44061 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Decio R. Petromilli, appeals from the judgment, entered by the Lake County Court of Common Pleas, after a trial by jury, convicting him of one count of deception to obtain a dangerous drug. We affirm the trial court's judgment.

{¶2} In July 2014, appellant was under the care of three doctors: Dr. Paul Hanahan, a family practitioner who was managing appellant's pain medications relating to chronic pain in his back and knees; Dr. James Walker, an orthopedic surgeon; and

Dr. Daniel Modarelli, a family practitioner who was aware of Dr. Walker, but unaware appellant was seeing Dr. Hanahan.

{¶3} In May 2013, appellant enlisted the services of Dr. Hanahan. Appellant entered a "drug contract narcotic agreement" with Dr. Hanahan that essentially stated Dr. Hanahan would be the only physician prescribing appellant medications while under his care. On June 2, 2014, Dr. Hanahan prescribed appellant 90 Oxycodone tablets, which appellant filled two days later. Dr. Hanahan also wrote appellant a post-dated prescription for the same amount to be filled on July 2, 2014. Appellant filled that prescription on that date.

{¶4} Due to his various medical problems, Dr. Hanahan referred appellant to Dr. Walker in April 2014. Dr. Walker was aware appellant was seeing Dr. Hanahan for pain management, but, during a visit in early July 2014, appellant indicated he was unable to see Dr. Hanahan for an unspecified period of time. In light of this, Dr. Walker wrote appellant a one-week prescription for Percocet on July 2, 2014. Dr. Walker stated he prescribed the Percocet to "cover" appellant's pain until he could see Dr. Hanahan; Dr.Walker also advised appellant to "follow-up" with Dr. Hanahan vis-à-vis the July 2, 2014 prescription during his next visit.

{¶5} Prior to receiving Dr. Walker's July prescription, appellant had received a prescription from a physician's assistant for 10 oxycodone pills, which he filled on June 30, 2014. Moreover, appellant had a pre-written prescription from Dr. Hanahan for 90 Oxycodone pills that was scheduled to be filled on July 2, 2014, the same date Dr. Walker provided appellant with his script. Appellant did not inform Dr. Walker of these pre-existing prescriptions.

**{¶6}** On July 8, 2014, Dr. Hanahan saw appellant and wrote him a prescription for 90 oxycodone, which appellant filled. Dr. Hanahan was unaware of both the prescription written by Dr. Walker as well as the script written by the physician's assistant. Dr. Hanahan testified he would not have written the July prescription had he known of the others because of the risk of overmedication and because appellant breached the narcotics agreement by accepting and filling the other prescriptions. Similarly, Dr. Walker testified he would not have written the July 2, 2014 prescription had he known of the June prescription as well as the July 8, 2014 script that Dr. Hanahan would soon be issuing.

**{¶7}** On July 10, 2014, Dr. Daniel Modarelli saw appellant for multiple complaints, including a blood clot in his leg and chronic pain. Dr. Modarelli prescribed appellant 40 percocet pills on that date and referred him to a pain specialist. Dr. Modarelli was aware appellant was seeing Dr. Walker, but was unaware appellant was seeing Dr. Hanahan. Dr. Modarelli's notes demonstrate that appellant disclosed he had been on oxycodone; they also reflect he had reviewed and "reconciled" medications with him. According, to Dr. Modarelli, this meant he had discussed appellant's medications and appellant had previously taken oxycodone. As a result of these discussions, Dr. Modarelli testified he did not believe appellant was using the narcotic at the time he wrote the July 10, 2014 prescription. Dr. Modarelli testified that had he known appellant filled the prescription on July 8, 2014 for 90 oxycodone, he would not have written the July 10, 2014 prescription.

**{¶8}** Appellant was ultimately indicted on two counts of deception to obtain a dangerous drug, fourth-degree felonies, in violation of R.C. 2925.22(A) (one count

relating to Dr. Walker's July 2, 2014 prescription and one count relating to Dr. Modarelli's July 10, 2014 prescription). Appellant was also indicted on one count of deception to obtain a dangerous drug exceeding the bulk amount, a third-degree felony, in violation of R.C. 2925.22(A) (relating to Dr. Hanahan's July 8, 2014 prescription). Appellant entered pleas of not guilty and the matter proceeded to trial. After trial by jury, appellant was found not guilty on the counts relating to the prescriptions written by Drs. Hanahan and Walker, but was found guilty on the count pertaining to the prescription written by Dr. Modarelli. The trial court sentenced appellant to 18-months imprisonment, to be served consecutively with sentences in two separate cases. Appellant appeals and assigns the following as error:

{¶9} "[1.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶10} "[2.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A)."

{¶11} When a defendant moves a court pursuant to Crim.R. 29, he or she is challenging the sufficiency of the state's evidence. A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle,* 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

4

{¶12} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4 -*5 (Dec. 23, 1994).

{¶13} Appellant was convicted of deception to obtain a dangerous drug, in violation of R.C. 2925.22(A), which provides:

{¶14} "(A) No person, by deception, shall procure the administration of, a prescription for, or the dispensing of, a dangerous drug or shall possess an uncompleted preprinted prescription blank used for writing a prescription for a dangerous drug."

{¶15} R.C. 2913.01(A) defines "deception" as:

{¶16} "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

{¶17} The evidence adduced at trial demonstrated that Dr. Hanahan referred appellant to Dr. Walker and each knew of the other's involvement in appellant's treatment. Moreover, although Dr. Modarelli was aware appellant was seeing Dr. Walker for orthopedic issues, he was not aware appellant was seeing Dr. Hanahan for pain management. Dr. Modarelli testified that appellant had disclosed he had *previously* been prescribed oxycodone, but did not disclose that he had filled a prescription for the drug, via Dr. Hanahan, on both July 2 and July 8, 2014, just days prior to Dr. Modarelli issuing a prescription for the same medication. Dr. Modarelli

testified that, had appellant disclosed this information, he would not have written the July 10, 2014 prescription.

{¶18} Moreover, the jury heard testimony of Damian Blakeley, a special agent from the Lake County Narcotics Agency. He testified he initiated an investigation into appellant's procurement of prescriptions on July 18, 2014, after Dr. Modarelli's office notified him of a potential issue with appellant filling multiple prescriptions. Mr. Blakeley ran a report through the Ohio Automated Rx Reporting System ("OARRS") to review appellant's history of filling prescriptions for drugs that are commonly abused. The report provided information regarding when a prescription was written, sets forth the name of the doctor who issued it, the amount of the drug, and the pharmacy at which it was filled. After reviewing the report, Mr. Blakely visited the pharmacies at which appellant filled the prescriptions and obtained copied images of the scripts. He then spoke with Drs. Hanahan and Modarelli and through his discussions with the physicians, determined that appellant did not communicate with either doctor that he was seeing the other; hence, Mr. Blakeley concluded appellant had been seeing multiple doctors in order to obtain the same or similar controlled substances; namely, oxycodone or hydrocodone. According to Mr. Blakeley, the information provided probable cause for an arrest warrant.

{¶19} The foregoing demonstrates that appellant, by withholding information about his association with Dr. Hanahan as well as the July 2 and July 8, 2014 prescriptions, gave Dr. Modarelli the false impression he was not on oxycodone or that he had not recently filled a prescription for the drug, when he procured the July 10, 2014 prescription for oxycodone, a dangerous drug, from Dr. Modarelli. There was therefore

6

sufficient, credible evidence to support the jury's guilty verdict beyond a reasonable doubt.

{¶20} Appellant's two assigned errors lack merit.

{¶21} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.