[Cite as *State v. Vanderpool*, 2014-Ohio-1364.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-P-0040** |
| KENNETH W. VANDERPOOL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Kent Division, Case No. 12 CRB 922.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Drnjevich,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Noah C. Munyer,* 135 Portage Trail, Cuyahoga Falls, OH 44221 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Kenneth Vanderpool, appeals from the judgment of conviction entered by the Portage County Municipal Court, Kent Division. Appellant challenges the weight and sufficiency of the evidence as well as certain evidentiary rulings, which, he claims, limited his ability to establish bias on the part of the child-victim's mother. For the reasons discussed below, we affirm the trial court's judgment.

{¶2} On April 25, 2012, Robin Pfeiler, mother of Di. V., the victim, filed a criminal complaint with the Kent Police Department alleging that, on April 20, 2012, appellant, the father of the victim, committed domestic violence, in violation of R.C. 2929.25(A), against their 11-year-old son. Appellant entered a plea of not guilty to the charge.

{¶3} The matter proceeded to a bench trial at which Di. V., Ms. Pfeiler, and the victim's elder brother, Da. V., testified for the state. According to Di. V., he and his two brothers live with their mother and stepfather. They visit appellant, however, every other weekend. On Sunday, April 20, 2012, Di. V. and his brothers were at appellant's home. Di. V. was in his room listening to music and playing a video game. According to Di. V. , appellant's wife, Betty Vanderpool, asked him to turn the volume of his music down. Di. V. did not immediately comply and Ms. Vanderpool asked appellant, who was outside, to address the situation. Di. V. testified appellant stormed into the house and demanded that Di. V. get dressed and go outside. Di. V. surmised he did not dress sufficiently fast and, as a result, appellant suddenly grabbed him and threw him into a closet door. The force with which Di. V. struck the door caused a large bump on his forehead.

{¶4} Da. V. testified he was across the hall in his room when he heard Di. V. "talking back" to Ms. Vanderpool. He then heard his father come into the house, utter cuss words, and enter Di. V.'s room. The older brother heard yelling coming from Di. V.'s room and then a loud slam. When he entered Di. V.'s room, Da. V. saw his brother on the ground holding his forehead.

2

{¶5} Later that Sunday evening, Ms. Pfeiler testified she picked the children up at a pre-designated location, per an arrangement established in a custody order. The boys were hungry so they went to dinner. After they sat down, Di. V. removed a hat he was wearing and Ms. Pfeiler noticed a large "goose egg" on the child's forehead. After finishing their meal, Ms. Pfeiler took Di. V. to the hospital to have the injury examined. Although the injury was visibly pronounced, Di. V. did not sustain a significant injury from the incident; nevertheless, Ms. Pfeiler later went to the police and filed the underlying complaint.

{¶6} After the state rested, appellant called Ms. Vanderpool as his first witness. Ms. Vanderpool testified that, on Sunday afternoon, she observed Di. V.'s younger brother crying and holding his head that Sunday afternoon. Because the boys were rough-housing, she inferred they may have bumped heads. As a result, she sat with and consoled the younger child. Ms. Vanderpool testified, however, she witnessed no altercation between appellant and Di. V.

{¶7} Alexandria Sweda, Ms. Vanderpool's daughter, testified she was in a bathroom, located near Di. V.'s room, combing her hair when the incident took place. She stated she did not witness any physical contact between appellant and Di. V. She further testified she did not hear appellant yelling, swearing, or stomping around.

{¶8} Finally, appellant testified on his own behalf. He stated he was working on a boat outside when he entered the home to retrieve Di. V. Appellant testified both Di. V. and Da. V. came outside with him. He underscored that at no point did he have a physical altercation with Di. V. Appellant admitted he had been previously charged with

felonious assault and domestic violence, but not convicted. He also admitted he had pleaded guilty to assaulting Ms. Pfeiler four years earlier.

{¶9} After the trial, appellant was found guilty of domestic violence, a misdemeanor of the first degree. Appellant was sentenced to 20 days in jail, given a fine of $1,000, and placed on probation for one year. The trial court stayed the sentence pending appeal. Appellant assigns two errors for our review. His first assignment of error provides:

{¶10} "The appellant's conviction was against the manifest weight and sufficiency of the evidence."

{¶11} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9 (11th Dist.).

{¶12} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994).

**{¶13}** Appellant was charged with domestic violence, in violation of R.C. 2919.25(A). That section provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶14}** The state, via the direct testimony of Di. V., produced sufficient evidence to prove the charge of domestic violence. To wit, Di. V. stated appellant grabbed him and threw him into a closet door. And appellant's actions caused the boy to sustain a large bump on his forehead. Although appellant denied the charge, there was adequate evidence, by way of Di. V.'s testimony, to establish appellant knowingly caused physical harm to Di. V. There was therefore sufficient evidence to overcome appellant's Crim.R. 29 motion.

**{¶15}** Furthermore, even though the defense presented evidence that, if believed, could have undermined the state's evidence, a conviction is not against the manifest weight of the evidence simply because the trial court elected to believe the prosecution's evidence over that of the defense. *See e.g. State v. Nadock*, 11th Dist. Lake No. 2009-L-042, 2010-Ohio-1161, ¶77. Despite appellant's claims of innocence, the trial court chose to accept Di. V.'s version of events. And Di. V.'s testimony that appellant threw him into the closet door causing him physical injury was enough to establish the crime of domestic violence. We consequently hold the trial court's verdict does not represent a miscarriage of justice because it was consistent with and supported by the evidence submitted by the state.

**{¶16}** Appellant's first assignment of error lacks merit.

**{¶17}** Appellant's second assignment of error provides:

{¶18} "The trial court erred in preventing appellant from testifying about previous legal encounters with the victim's mother which tended to show bias."

{¶19} Under this assignment of error, appellant challenges the trial court's decision to prohibit the introduction of testimony that he maintains would have demonstrated Ms. Pfeiler's bias towards him. In particular, appellant argues the trial court erred when it sustained the state's objection to appellant's inquiry about the children's use of a different last name. Appellant further asserts the trial court erred when it prevented him from testifying about custody issues he and Ms. Pfeiler have endured since they severed their relationship.

{¶20} With respect to the first issue, during cross-examination of Da. V., appellant's counsel asked the boy whether he ever used a different last name. Da. V. responded in the negative. Counsel then attempted to introduce a Facebook page; the court interrupted, asking counsel to explain the relevance of the proposed exhibit and the state subsequently objected because the exhibit was not disclosed prior to trial. Counsel did not dispute the state's assertion that the page was not submitted during discovery. The court eventually excluded the exhibit, concluding it was not relevant.

{¶21} Later, while cross-examining Ms. Pfeiler, defense counsel inquired whether she knew if any of the children used alternative last names. The state objected. Based upon its earlier ruling, the trial court sustained the objection, finding the line of questioning irrelevant.

{¶22} The rules of evidence permit the impeachment of a witness through various means. In particular, Evid.R. 616(A) provides a witness may be impeached by a showing of bias or establishing a motive to misrepresent via either examination or

6

extrinsic evidence. Impeachment evidence used pursuant to Evid.R. 616(A), however, must be relevant as required by Evid.R. 402. And, evidence is relevant if it has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. DeRose,* 11th Dist. Lake No. 2000-L-076, 2002-Ohio-4357, ¶15, quoting Evid.R. 401.

**{¶23}** In the abstract, evidence that Ms. Pfeiler was aware of or ratified the possibility that the children used an alternative last name would provide some indication of bias toward appellant. In this case, the context of the evidence that prompted the filing of the charge, i.e., the large, empirically-verified bump on Di. V.'s forehead, would render her knowledge or ratification of the children's possible use of an alternative last name essentially inconsequential. To wit, upon discovery of the injury, it was eminently reasonable for Ms. Pfeiler, as a parent, to accept Di. V.'s rendition of events and pursue criminal charges, irrespective of any potential surrounding bias she may have had toward appellant. In the context of this proceeding, therefore, the trial court did not err in finding the proposed evidence irrelevant.

**{¶24}** And, even assuming the trial court erred in excluding the evidence, any error was harmless as its introduction would have been cumulative. The record reflects appellant and Ms. Pfeiler had a tumultuous relationship that included past episodes of hostility. Appellant testified he had been charged with felonious assault against Ms. Pfeiler and eventually pleaded guilty to an assault charge. Given these facts, there was ample circumstantial evidence that Ms. Pfeiler may have a bias against appellant.

7

{¶25} Appellant further asserts the trial court erred when it prevented his attorney from inquiring into custody battles he and Ms. Pfeiler have gone through since they ended their relationship. The record discloses, however, that the court permitted appellant to testify, at least generally, about problems he and Ms. Pfeiler have had in relation to custody of the children. To wit, on appellant's direct examination, the following exchange took place:

{¶26} [Defense Counsel:] Okay and you have had a long history of fighting with the mother of these children for visitation, is that correct?

{¶27} [Prosecutor:] Objection.

{¶28} The Court: I will let him answer it.

{¶29} [Prosecutor:] Please note my objection for the record that this is getting into the juvenile court scenario that I don't believe is relevant here, and it's just not appropriate. Just note my objection for the record, please.

{¶30} The Court: I'm going to keep a short leash on it.

{¶31} [Appellant:] I'll keep my answer short. It's not only the, uh, the - - gosh, I can't think here. You know, the juvenile court is separate. I mean she's been found in contempt three times for that.

{¶32} The prosecutor objected anew to appellant's answer and the court reiterated its intention to keep a "short leash" on the inquiry. Counsel for appellant, however, did not further pursue the issue.

{¶33} Appellant was given the opportunity to discuss the tensions surrounding the custody issue and, in doing so, testified Ms. Pfeiler had been held in contempt several times during the course of the juvenile proceedings. Despite the state's objection, the court permitted the answer. The court never expressly ruled appellant could not expand on the problems; counsel simply did not pursue the issue further. Consequently, appellant's argument that the trial court erred in precluding his counsel from exploring custody issues appellant had with Ms. Pfeiler is misplaced. The court permitted the inquiry and counsel did not further inquire on the issue once appellant testified about Ms. Pfeiler being held in contempt. The court, therefore, committed no error.

{¶34} In any event, much like the issue regarding the children's alleged use of a different surname, defense counsel was able to establish that custody of the children was an issue of contention between appellant and Ms. Pfeiler. This was sufficient to provide a basis for an inference of bias. Accordingly, any further evidence, particularly in the context of a bench trial, could be deemed cumulative.

{¶35} Appellant's second assignment of error is without merit.

{¶36} For the reasons discussed in this opinion, the judgment of the Portage County Municipal Court, Kent Division, is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

9