[Cite as *Gondor v. State*, 2015-Ohio-4022.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| BOB GONDOR, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2014-P-0030** |
| STATE OF OHIO, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2008 CV 0352.

Judgment: Affirmed.

*Steven L. Bradley,* Marein & Bradley, 222 Leader Building, 526 Superior Avenue, Cleveland, OH 44114 (For Plaintiff-Appellee Bob Gondor); *Mark B. Marein,* Marein & Bradley, 222 Leader Building, 526 Superior Avenue, Cleveland, OH 44114 and *Gregory S. Robey*, Robey & Robey, 14402 Granger Road, Cleveland, OH 44137 (For Plaintiff-Appellee Randy Resh).

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, the state of Ohio, appeals from the May 12, 2014 judgment of the Portage County Court of Common Pleas, finding appellees, Bob Gondor and Randy Resh, to be wrongfully imprisoned individuals and granting judgment in their favor.

{¶2} This matter stems from a 1988 murder. Gondor was originally indicted for complicity to commit aggravated murder, in violation of R.C. 2923.03(A)(2) and (D) and 2903.01(B) and (C), with specifications which elevated the case to a capital murder prosecution; obstructing justice, in violation of R.C. 2921.32(A)(1), (2), (4), (5) and (B); kidnapping, in violation of R.C. 2905.01(A)(4) and (C); and attempted rape, in violation of R.C. 2923.02(A) and (E). Resh was originally indicted for aggravated murder, in violation of R.C. 2903.01(B) and (C), with specifications which elevated the case to a capital murder prosecution; obstructing justice, in violation of R.C. 2921.32(A)(1), (2), (4), (5), and (B); kidnapping, in violation of R.C. 2905.01(A)(4) and (C); and attempted rape, in violation of R.C. 2923.02(A) and (E). Gondor and Resh were convicted separately by juries and sentenced.

{¶3} Years later, the Supreme Court of Ohio remanded the cases to the trial court for re-trials. A jury found Resh not guilty. Thereafter, the charges against Gondor were dismissed. Gondor and Resh later sought a declaration of innocence. Following trial, the court found Gondor and Resh to be wrongfully imprisoned individuals under R.C. 2743.48(A).

{¶4} In this appeal, the state asserts that the trial court erred in failing to declare a witness unavailable and admit her prior testimony; that Gondor is not a wrongfully imprisoned individual; and that the trial court's decision finding Gondor and Resh wrongfully imprisoned individuals was both an abuse of discretion and against the manifest weight of the evidence. For the reasons that follow, we affirm.

{¶5} By way of background, on August 15, 1988, the body of Connie Nardi was found floating face down in a pond located near Rapids Road, Geauga County, Ohio.

2

An autopsy revealed that Nardi had been strangled to death. Geauga County authorities conducted the initial investigation of Nardi's death. After discovering that a missing person report had been filed with the Portage County Sheriff, the Geauga County investigators determined that the body found in the pond was Nardi. The Geauga investigators learned that Nardi owned a red Toyota truck which was not found near the body. Consequently, they reported the truck stolen.

{¶6} The truck was later found at Ed's Upper Deck, a bar in Mantua, Portage County, Ohio. Discussions with Edward Douglas, the owner of the Upper Deck, disclosed that Nardi had left the bar twice with Troy Busta on the night of her death. She did not return to the bar after leaving with Busta the second time.

{¶7} Thereafter, Busta was arrested for the murder of Nardi and subsequently confessed to the crime. Busta also implicated Gondor and Resh, who were indicted on charges related to Nardi's murder. Busta's incrimination of Gondor and Resh allowed Busta to avoid a capital trial. Busta was given a plea bargain to a lesser charge of murder. Gondor and Resh contested the charges alleged against them. Both men received separate criminal trials which resulted in wrongful convictions.

{¶8} In Gondor's case, the jury found him guilty of involuntary manslaughter, kidnapping, and obstructing justice. Gondor was consecutively sentenced to 10 to 25 years for involuntary manslaughter, 10 to 25 years for kidnapping, and 18 months for obstructing justice.

{¶9} In Resh's case, the jury found him guilty of murder and attempted rape. Resh was consecutively sentenced to 15 years to life for murder and five to 15 years for attempted rape.

3

{¶10} Both Gondor and Resh appealed their convictions. On December 11, 1992, this court affirmed the trial court's judgments. *State v. Gondor*, 11th Dist. Portage No. 90-P-2260, 1992 Ohio App. LEXIS 6219 (Dec. 11, 1992), appeal not accepted, 67 Ohio St.3d 1408 (1993); *State v. Resh*, 11th Dist. Portage No. 90-P-2256, 1992 Ohio App. LEXIS 6222 (Dec. 11, 1992), appeal not accepted, 66 Ohio St.3d 1473 (1993).

{¶11} Subsequently, Gondor and Resh filed motions for post-conviction relief in 1996. The trial court denied both petitions without holding an evidentiary hearing. Both men appealed. Upon review, this court reversed and remanded finding that Gondor and Resh were entitled to an evidentiary hearing. *State v. Gondor*, 11th Dist. Portage Nos. 96-P-0261 and 97-P-0017, 1997 Ohio App. LEXIS 5751 (Dec. 19, 1997); *State v. Resh*, 124 Ohio App.3d 694 (11th Dist.1997).

{¶12} The matter proceeded to an eight-day, joint evidentiary hearing before a visiting judge. In support of their petitions, Gondor and Resh claimed the state failed to turn over relevant and exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and that they were denied the effective assistance of counsel. The trial court denied Gondor's and Resh's assertion that the state withheld relevant and exculpatory information in violation of *Brady*. However, the court found that Gondor's and Resh's trial defense counsel were ineffective in not recognizing and using the exculpatory information available in the prosecutor's file. The court found these mistakes by trial defense counsel affected the outcome of both Gondor's and Resh's criminal trials. As a result, the court ordered that both men be re-tried.

{¶13} The state appealed. This court found in favor of the state and reversed the trial court's decision. *State v. Gondor*, 11th Dist. Portage No. 2002-P-0073, 2004-

4

Ohio-7219; *State v. Resh*, 11th Dist. Portage No. 2002-P-0074, 2004-Ohio-7220. However, upon further appeal, the Supreme Court of Ohio found the trial court was correct and reversed this court's opinions. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679. The Supreme Court remanded the cases to the trial court for re-trials. *Id.*

{¶14} Resh was re-tried and acquitted. Following Resh's acquittal, the charges against Gondor were dismissed. At that time, each man had served approximately 16 years in prison.

{¶15} The instant matter arises from Gondor's and Resh's complaint and amended complaints seeking a declaration of innocence and contending that an error in procedure resulted in their release under R.C. 2743.48. Thereafter, Gondor and Resh moved for summary judgment on the ground that an error in procedure resulted in their release. The trial court denied the motion on February 27, 2014, finding that ineffective assistance of trial counsel was not an error in procedure as contemplated by the statute. The court then supplemented its ruling following the release of *Mansaray v. State*, 138 Ohio St.3d 277, 2014-Ohio-750 (the error in procedure must have occurred subsequent to sentencing and during or subsequent to imprisonment.)

{¶16} A nine-day civil trial commenced on April 21, 2014 before **a visiting judge**. More than 20 witnesses testified. The facts contained in the record, and summarized in the trial court's entry, are as follows:

{¶17} The state alleges that Nardi was killed between 9:30 p.m. to 10:30 p.m. on August 14, 1988, primarily from information received from Busta. However, the record establishes that the activities of Gondor and Resh puts them nowhere near Nardi and

5

Busta to participate in the criminal activity they were originally accused of. There is no physical or forensic evidence of any kind linking either or both men to Nardi's murder.

{¶18} Nardi went to the Upper Deck on Sunday, August 14, 1988, in her red Toyota around 4:30 p.m. She was already under the influence of alcohol at that time. Nardi drank beer and danced for several hours. In the meantime, Busta arrived on his motorcycle around 5:30 p.m. He was under the influence of alcohol and drugs at that time. Busta and Nardi danced and drank beer together. Around 7:00 p.m., Busta and Nardi left the bar to go on a motorcycle ride.

{¶19} That same evening, Resh arrived at the Upper Deck between 5:30 p.m. and 6:00 p.m. Gondor joined him around 7:00 p.m. They drank beer together and left the bar around 9:45 p.m.

{¶20} Busta and Nardi returned to the Upper Deck around 7:30 p.m. They continued to drink and socialize as well as bowl. Between 7:00 p.m. and 9:00 p.m., they were joined by Billy Radcliffe, who participated in drinking, using the bowling machine, and dancing. Sometime near 9:00 p.m., Busta purchased a six pack of beer and left the Upper Deck with Nardi.

{¶21} At about 8:45 p.m., Connie Dawes (Resh's sister), along with her then husband, Mark Johanson, and their three-year-old child, came to the Upper Deck where they saw Gondor and Resh. At 9:04 p.m., as verified by a Domino's order form, Johanson ordered a pizza. Johanson left the bar at about 9:20 p.m. to pick up the pizza. Johanson returned around 9:30 p.m. Gondor and Resh were still at the Upper Deck. Dawes, Johanson, and their child left the bar around 9:45 p.m. Gondor and Resh were still there at that time.

{¶22} Between 9:45 p.m. and 10:00 p.m., Gondor and Resh left the Upper Deck and went to the Village Tavern, another local establishment. This time frame was corroborated by Douglas (the owner of the Upper Deck). Gondor and Resh arrived at the Village Tavern around 10:00 p.m., or shortly thereafter. They drank and socialized for about 40-45 minutes. This time frame was verified by the investigation of Deputy Tom Dewey after interviewing persons from the Village Tavern, including but not limited to the bar maid on duty that night, Mary Ann Walter.

{¶23} Gondor and Resh returned to the Upper Deck around 11:00 p.m. They ordered beer but were not served because the owner wanted to close. However, because Gondor and Resh helped Douglas bring beer from the stage area to the coolers, Douglas put three beers on top of the bar for them to drink. Around 11:20-11:30 p.m., Busta came back to the Upper Deck without Nardi. Around 11:35 p.m., Douglas, Gondor, Resh, and Busta left the bar. After a few minutes in the parking lot, Douglas left. Resh threw pieces of scrap wood, from the back of Gondor's truck, across the street towards the Cross Roads Bar. A neighbor was inside the establishment and called the bar's owner, Tom Costill, to report the activity. Costill arrived within five to 10 minutes. Costill observed the wood throwing. Costill yelled out to Gondor, Resh, and Busta, stating he was going to call the Sheriff's Department. Costill placed the call at 11:59 p.m. on August 14, 1988. Gondor, Resh, and Busta immediately left and headed in a direction towards Busta's home.

{¶24} Busta told his roommate, Joey Moore, that Gondor and Resh were coming to drink more beer. As Busta got home shortly after midnight, he was confronted by his father, who was upset with him. Busta then went to a white pick-up truck, that had

7

followed him into his driveway, with a driver who looked like Gondor, and after a brief conversation, the white truck left.

{¶25} Gondor and Resh returned to the Upper Deck to pick up Resh's vehicle, which was before 12:32 a.m., August 15, 1988, the time the police arrived at the Crossroads. Thereafter, Gondor and Resh arrived at Resh's home where they saw Tracy (Resh's wife). They had a drink and ordered a pizza from Dominos in Streetsboro at 12:42 a.m.. They picked up the pizza shortly after 1:00 a.m. They returned to the Resh residence where they remained overnight. Donald Vanaman (Resh's neighbor) corroborated this activity and time frames.

{¶26} Busta testified for the state. He admitted that on August 14, 1988, he had been drinking from around noon until near midnight and had been snorting powder cocaine throughout the day. Busta arrived on his motorcycle at the Upper Deck about 5:30 p.m. He drank, danced, and socialized with Nardi. Busta claimed Gondor and Resh were there when he came in. Around 7:00 p.m., Busta and Nardi left to go on a motorcycle ride. They returned around 7:30 p.m. Busta drank and socialized with Nardi and Radcliffe.

{¶27} Busta claimed that sometime after 8:00 p.m., he met up with Resh and alleged that Resh paid him for some cocaine. Busta said that he told Resh he had sex earlier with Nardi. Busta stated he arranged to meet up with Gondor and Resh at the "Washout Area" (a washed-out bridge area off Allyn Road in the Hiram Rapids area at the Cuyahoga River in Portage County, Ohio) at a later time where the three men would have sex with Nardi. Around 9:00 p.m., Busta ordered a six pack of beer, left the Upper Deck with Nardi, and drove to the "Washout Area." They arrived around 9:15 p.m.

8

{¶28} Busta stated he and Nardi drank the beer. Busta alleged that around 9:30 p.m., Gondor and Resh arrived. According to Busta, Resh asked Nardi if she would have sex with the three men and she declined. Busta said Resh asked again before Resh threw Nardi to the ground and stradled her while she was on her back. Busta said he held Nardi's hands and arms and claimed that Gondor, after removing Nardi's shorts and panties, held her legs. Busta claimed that Resh put his hands around Nardi's neck and strangled her to death.

{¶29} Busta further claimed they took Nardi's body from the "Washout Area" to Gondor's truck and then to the "Pond" (a body of water off Rapids Road in Geauga County, Ohio). Busta said Gondor and Resh carried Nardi's body 600 feet back to the "Pond" and Busta left on his motorcycle.

{¶30} Busta said he returned to the Upper Deck after 11:00 p.m. where he saw Gondor and Resh with Douglas. Busta stated he ordered a beer, left when the bar closed, and went into the parking area. Busta claimed that Douglas asked about Nardi's vehicle. After Douglas left, Busta said he noticed some blood on wood pieces in Gondor's truck. Busta indicated he, Gondor, and Resh threw wood pieces across the street towards Cross Roads Bar which ended when the owner came out and called the Sheriff's Department at about midnight. Busta said Gondor and Resh followed him home, but left shortly thereafter.

{¶31} The trial court determined, and this court agrees, that the overall testimony of Busta is unreliable. Busta was an alcohol and drug abuser with a community reputation for having a temper and being untruthful. The court detected numerous

9

inconsistencies and improbable assertions, which are evident from the record and addressed as follows:

{¶32} Busta alleged that Resh was bitten by Nardi during the struggle at the "Washout Area." However, no evidence was presented to show any marks on Resh in the days following the murder. Busta alleged that Douglas, on the night of August 14, 1988, asked about Nardi's vehicle. However, Douglas testified he knew nothing about the car until the Sheriff's Department retrieved it two days later. Busta asked Radcliffe to join him and Nardi at a bonfire within moments of Busta alleging that he arranged a meeting with Gondor and Resh to have sex with Nardi. Busta explained Nardi disappeared with men in a white car upon leaving the Upper Deck on the second occasion but later admitted that was not true.

{¶33} Busta claimed he ordered a beer with Gondor and Resh upon returning to the Upper Deck around 11:30 p.m. However, Douglas stated no beer was sold after 11:00 p.m. and that beer was only given to Gondor and Resh for their assistance in bringing beer from the stage area to the coolers. Busta claimed pieces of wood containing blood were thrown to get rid of inculpatory evidence. However, Busta's description of the wood differed from Costill's description when he found the pieces at the Crossroads Bar. Busta alleged he had sex with Nardi. However, he later recanted that statement. Busta claimed that wood fell out of Gondor's truck when Nardi's body was pulled out at the "Pond." However, no wood was ever located there. Busta testified he was wearing his work boots on the night of the murder. However, Moore (Busta's roommate) testified Busta was wearing Moore's cowboy boots. The cowboy boots were never tested for soil comparisons.

{¶34} On September 11, 1988, Kaye Busta (Busta's mother) brought a bag of clothes and shoes to the Geauga County Jail. The shoes in the bag were taken by Deputy Suhre where a knife was found inside one of the shoes. Busta stated the knife fell out when the shoes were thrown into his cell which is contradicted by the Deputy who testified the shoes were placed into evidence for a possible criminal action.

{¶35} Also, Busta's testimony of the alleged method of strangulation used by Resh is contradicted by two forensic pathologists, Joseph Felo M.D. and Susan Roe M.D. Drs. Felo and Roe opined that because of the lack of injuries around the neck, Nardi was probably killed by a broad surface strangulation rather than a hand choking strangulation as described by Busta. In addition, Dr. Roe testified that injuries to Nardi's facial and head area were incurred mostly from turtle activity in the "Pond" and not physical trauma as described by Busta.

{¶36} The trial court referenced, and this court agrees based on the record before us, that even the alleged location of Nardi's murder, the "Washout Area," is open to some question. There was no evidence of any kind found to indicate this would have been the area described by Busta. Conversely, soil samples from the "Pond" are similar to dirt samples from Nardi's boots, suggesting she may have walked in this area.

{¶37} The autopsy report and pictures of Nardi evidences the condition of her body when found in the "Pond" on August 15, 1988. The autopsy report indicates that but for a few bilateral linear abrasions of Nardi's chest, the largest measuring one quarter of an inch, there were no other observable injuries on her body from the neck area down. The record reveals the "Washout Area" had shrub, stones, and gravel. Nardi, a Karate trained individual, was allegedly fighting for her life, while, according to

11

Busta, he held her hands, Resh stradled her, and Gondor held her feet as she was on her back with her shorts and panties removed. Contrary to Busta's allegation, however, there were no injuries to Nardi's torso, legs, and arms in the autopsy report.

**{¶38}** As stated, Busta made a deal with the state to plead to a non-death penalty crime, the terms of which are not contained in the record before us. Assuming that part of his agreement was testifying against Gondor and Resh, the trial court indicated, and this court agrees, that that fact also raises questions about the quality of Busta's testimony. Busta's allegation that Gondor and Resh were at the scene of the crime is unsupported, and in fact contradicted, by the testimony of other witnesses who saw them elsewhere during the time period at issue, and is also belied by the crime scene evidence.

**{¶39}** Any inconsistency in the testimony by Gondor and Resh, however, does not negate the established time line for them between 9:00 p.m. and 11:00 p.m. on August 14, 1988. As Nardi was killed sometime between 9:30 p.m. to 10:30 p.m., the record establishes that the activities of Gondor and Resh puts them nowhere near Nardi and Busta to participate in the criminal activity they were originally accused of. This fact is corroborated by witnesses who saw them during this interval and who so testified. Again, there is also no physical or forensic evidence of any kind linking either or both men to Nardi's murder.

**{¶40}** Following the nine-day trial, the trial court determined that neither Gondor nor Resh were near or with Nardi during the time frame when she was murdered. Pursuant to its May 12, 2014 judgment, the court concluded that Gondor and Resh were innocent of Nardi's death and that both men had been wrongfully convicted and

12

imprisoned for 16 years under R.C. 2743.48(A). The state timely appealed and raises the following three assignments of error:

**{¶41}** "[1.] The trial court abused its discretion and erred to the prejudice of the State of Ohio by failing to declare Mary Anne Walter unavailable and admit her prior testimony.

**{¶42}** "[2.] Robert Gondor is not a wrongfully imprisoned individual because he failed to establish by a preponderance of the evidence the R.C. 2743.48(A) factors.

**{¶43}** "[3.] The trial court's decision finding Gondor and Resh wrongfully imprisoned individuals was both an abuse of discretion and against the manifest weight of the evidence."

**{¶44}** In its first assignment of error, the state argues the trial court abused its discretion by failing to declare Walter (the Village Tavern bar maid) unavailable and admit her prior testimony. The state alleges that Walter's former testimony from Gondor's 1990 criminal trial should have been admitted as evidence regarding Gondor and Resh's timeline of events on the evening of Nardi's murder under Evid.R. 804. Specifically, the state maintains that Walter recalled that Gondor and Resh were in the Village Tavern for "30 minutes at most."

**{¶45}** A trial court has broad discretion in the admission and exclusion of evidence. *State v. Edgell*, 11th Dist. Portage No. 2004-P-0062, 2005-Ohio-3265, ¶23, citing *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard,

13

misapplies the correct legal standard, or relies on clearly erroneous findings of fact."
*Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

**{¶46}** In its appellate brief, the state correctly sets forth the two-part test for determining the admissibility of hearsay evidence pursuant to Evid.R. 804: (1) the trial court must determine whether the declarant is unavailable to testify at trial and (2) whether the out-of-court statement bears sufficient indicia of reliability. *State v. Keairns*, 9 Ohio St.3d 228, 230 (1984). However, upon review, we find that the trial judge did not erroneously fail to declare Walter an unavailable witness and admit her prior testimony. The record reveals the state abandoned its efforts to have Walter's testimony admitted before the trial judge ever heard argument on the state's request. **Evidence was never proffered.** Thus, we determine the state failed to pursue its request at trial and did not preserve the issue for appeal. In addition, based on the facts presented, Walter's prior testimony is of no consequence and does not change the outcome in this case. Accordingly, we see no prejudice to the state.

**{¶47}** Walter was found to be living in Alaska. She had a health condition, could not travel, and had no computer. After presenting evidence regarding the issue of whether Walter was unavailable, the prosecutor asked that Walter's prior testimony be admitted. The matter recessed for lunch and was apparently dealt with in chambers after lunch, of which there is no record. When the matter resumed that afternoon, back on the record, the state did not bring the issue to the attention of the trial court and instead called Busta, its next witness.

**{¶48}** Busta testified on cross-examination that it was impossible for Gondor and Resh to have ever been at the Village Tavern on the evening at issue. After hearing

14

that testimony, the state did not further seek to have Walter's prior testimony admitted. Again, Walter's testimony would have put Gondor and Resh at the Village Tavern that evening, which would have undermined Busta's testimony. Thus, after Busta testified, the state never renewed its request to have Walter's testimony admitted. Also, at the close of its case, the state did not offer a transcript of Walter's testimony.

{¶49} Accordingly, as the state failed to pursue the matter, the trial court did not err in not ruling on the issue. *See, e.g., State v. Vanderpool*, 11th Dist. Portage No. 2013-P-0040, 2014-Ohio-1364. In addition, the state did not proffer Walter's testimony into the record so that the trial court could review it. Thus, this court cannot entertain on appeal an issue of excluded evidence where the excluded evidence was never proffered. *See* Evid.R. 103(A)(2); *State v. Brooks*, 44 Ohio St.3d 185, 195 (1989) ("[C]ounsel failed to proffer to the trial court what the desired testimony of [a witness] was and how it would have been relevant and material * * *. Evid.R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence, unless the excluded evidence is apparent in the record.")

{¶50} Even if Walter's prior testimony had been pursued, preserved, and admitted, such testimony is inconsequential. Whether Walter's testimony would shorten the time frame that Gondor and Resh spent at the Village Tavern by 15 minutes, the outcome in this case would not change.

{¶51} The parties agree that Gondor and Resh were at the Village Tavern at some point between 9:00 p.m. and 11:00 p.m. on Sunday, August 14, 1988. The state asserts, however, that Walter's prior testimony would have limited the amount of time that Gondor and Resh were at the Village Tavern by approximately 15 minutes. Even

assuming this is true, contrary to the state's assertion, it is not plausible to believe that in 15 minutes Gondor and Resh were able to do the following: leave the Village Tavern; meet up with Busta; solicit Nardi for sex; kill Nardi when she refused; move Nardi's body to Gondor's truck; drive the truck to a parking area near a pond; walk 600 feet on a dirt path while carrying Nardi's body; dump her body in the pond; return to the truck; and drive back to the Upper Deck.  Even the state's principal witness, Busta, testified such a scenario was impossible.

**{¶52}** The state's first assignment of error is without merit.

**{¶53}** In its second assignment of error, the state contends that because Gondor obstructed justice, he is not a wrongfully imprisoned individual and cannot establish by a preponderance of the evidence the R.C. 2743.48(A) factors.

**{¶54}** R.C. 2743.48 states:

**{¶55}** "(A) As used in this section and section 2743.49 of the Revised Code, a 'wrongfully imprisoned individual' means an individual who satisfies each of the following:

**{¶56}** "(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony or felony.

**{¶57}** "(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.

16

**{¶58}** "(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

**{¶59}** "(4) The individual's conviction was vacated, dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

**{¶60}** "(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated that the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person."

**{¶61}** When reviewing a trial court's ruling that a claimant demonstrated by a preponderance of the evidence that he qualified as a wrongfully imprisoned individual, an appellate court reviews the record to determine if the trial court's judgment is supported by competent, credible evidence going to all the essential elements of the case. *See Ratcliff v. State*, 94 Ohio App.3d 179, 182 (4th Dist.1994). Generally, an appellate court defers to the trial court's determination of the facts as it was in the best position to view the witnesses, observe their demeanor, gestures, and voice inflections, and use these observations in weighing credibility. *Id.* at 183, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶62} Upon review of the record, we find that both Gondor and Resh established the R.C. 2743.48(A) factors and that the trial court did not err in finding them to be wrongfully imprisoned individuals. The time period of Nardi's death was established as 9:00 p.m. to 11:00 p.m. The record reveals that neither Gondor nor Resh were near or with Nardi at the time of her death. The record further reveals that neither Gondor nor Resh committed the original charges, including all lesser-included offenses.

{¶63} The state limits its argument under this assignment to Gondor only. At trial, the judge asked the state what significance could be attached to the alleged issue of following Busta home as it pertained to the commission of the crime. The state noted that it affected Gondor's and Resh's credibility. On appeal, the state now alleges that because Gondor recalled the events at issue differently than did Resh and others, Gondor must have obstructed justice when making a statement to the police. We note that this court need not consider here what was not presented below. *State v. Urso*, 195 Ohio App.3d 665, 2011-Ohio-4702, ¶77 (11th Dist.)

{¶64} In any event, however, a difference in recollection does not amount to obstruction of justice. Also, helping another remember the truth is not obstruction of justice. Rather, obstruction of justice requires a purpose to hinder an investigation of another. R.C. 2921.32(A); *State v. Moore*, 11th Dist. Geauga No. 2014-G-3183, 2014-Ohio-5182, ¶37.

{¶65} Gondor's conversation with Resh, after Resh had talked to the police, helped Resh remember that the two had been to the Village Tavern on the evening at issue. This has now been confirmed by independent witness testimony. Also, the state's theory is that upon arriving at Busta's, Gondor and Resh simply waited in the

18

driveway and then left because Busta and his father were arguing and Busta did not invite them inside. The fact that Resh agreed with Gondor that they did not go to Busta's after leaving the Upper Deck does not indicate an intent to hinder the investigation of Nardi's murder. The fact that they did not recall having driven to Busta's house was not a material fact that hindered the investigation. In fact, both Gondor and Resh told police that they had been with Busta at the Upper Deck both before and after closing. Contrary to the state's position, we fail to see an obstruction of justice.

**{¶66}** The state's second assignment of error is without merit.

**{¶67}** In its third assignment of error, the state alleges the trial court's decision finding Gondor and Resh wrongfully imprisoned individuals was an abuse of discretion and against the manifest weight of the evidence.

**{¶68}** "'[T]he Supreme Court of Ohio has clarified the analysis used to determine whether judgments in civil cases are against the manifest weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶12-23, * * *, (* * *). In *Eastley*, the Supreme Court noted that most of Ohio's appellate courts applied the analysis set forth in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, * * *, (* * *). *Eastley* at ¶14. In *C.E. Morris*, the court held: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris* at the syllabus. As the court in *Eastley* observed, this is the standard applicable to determining the sufficiency of the evidence underpinning a judgment. *Id.* at ¶14. The court held that the proper analysis for determining challenges to the manifest weight of the evidence is the same in civil and criminal cases, and that *State v.*

19

*Thompkins*, 78 Ohio St.3d 380, * * *, (* * *) (1997) applies to both. *Id.* at ¶17-20. The court quoted with approval the following language used by the Ninth Appellate District:

{¶69} "'""The (reviewing) court (* * *) weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the (finder of fact) clearly lost its way and created such a manifest miscarriage of justice that the (judgment) must be reversed and a new trial ordered."' (Alterations made in Tewarson) *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, * * *, (* * *)(* * *) (9th Dist.2001) (* * *), quoting *Thompkins*, 78 Ohio St.3d at 387, (* * *), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, * * *, (* * *)(* * *) (1st Dist.1983)." (Parallel citations omitted.) *Eastley* at ¶20.

{¶70} "'The court in *Eastley* further observed that in weighing the evidence in civil cases, courts of appeals must make every presumption in favor of the finder of fact, and construe the evidence, if possible, to sustain the judgment of the trial court. *Id.* at ¶21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, * * *, (* * *) (1984).' (Parallel citations omitted.) *Avery Dennison Corp. v. Transact Techs., Inc.*, 11th Dist. Lake No. 2012-L-132, 2013-Ohio-4551, ¶20-22." (Parallel citations omitted.) *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-034 and 2014-L-042, 2014-Ohio-5615, ¶12-14.

{¶71} With respect to the manifest weight of the evidence, we note that the trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶72} Here, the trial court determined there was no physical or forensic evidence of any kind linking Gondor and Resh to Nardi's murder. Contrary to the state's position,

we see no improper burden shifting. In fact, the trial judge explicitly stated in the May 12, 2014 judgment that "Gondor and Resh have the burden." The court did not require the state to produce physical or forensic evidence.

{¶73} In addition, contrary to the state's position, the trial court assigned the proper weight to each witness and properly determined the facts based upon the record. The court determined that the overall testimony of Busta was incredible and unreliable after comparing it to the other evidence in this case. The trier of fact chose to believe Gondor and Resh and their witnesses regarding their innocence, which was consistent with the independent evidence that did not place them at the scene of the crime at the time of Nardi's murder. *DeHass, supra*, at paragraph one of the syllabus. We note that the determination of credibility is an individual determination that the trial judge was free to make.

{¶74} The state also asserts that it presented circumstantial evidence that there was a period of time between 9:00 p.m. and 11:00 p.m. on August 14, 1988 that Gondor and Resh cannot account for. The state alleges that Nardi was killed between 9:30 p.m. to 10:30 p.m. on August 14, 1988, primarily from information received from Busta. Again, the record establishes, however, that the activities of Gondor and Resh puts them nowhere near Nardi and Busta to participate in the criminal activity they were originally accused of.

{¶75} Based on the facts presented, as previously stated, the trial court's conclusions are supported by competent, credible evidence. Gondor and Resh showed, by a preponderance of the evidence, that they satisfied the R.C. 2743.48(A) factors. We cannot say that the trial court's decision finding Gondor and Resh

wrongfully imprisoned individuals was an abuse of discretion or against the manifest weight of the evidence.

{¶76} The state's third assignment of error is without merit.

{¶77} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.