[Cite as *State v. Skaggs*, 2016-Ohio-1160.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | **:** | **O P I N I O N** |
| Plaintiff-Appellee, | **:** | |
| | | **CASE NO. 2015-L-024** |
| - vs - | **:** | |
| JASON J. SKAGGS, | **:** | |
| Defendant-Appellant. | **:** | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000937.

Judgment: Affirmed in part, reversed in part, and remanded.

*Charles E. Coulson,* Lake County Prosecutor, *Alana A. Rezaee,* Assistant Prosecutor, and *Jacqueline M. O'Donnell, Assistant Prosecutor,* Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH   44077 (For Plaintiff-Appellee).

*Matthew C. Bangerter,* P.O. Box 148, Mentor, OH  44061 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1}     Appellant, Jason Skaggs, appeals from the February 10, 2015 judgment of the Lake County Court of Common Pleas, sentencing him for receiving stolen property following a jury trial.  For the reasons that follow, we affirm in part, reverse in part, and remand the matter for further proceedings.

{¶2}     On February 7, 2014, appellant was indicted by the Lake County Grand Jury on one count of receiving stolen property, a felony of the fifth degree, in violation of

R.C 2913.51(A). Appellant pleaded not guilty and a jury trial commenced on January 20, 2015. The following facts were adduced at trial.

{¶3} Jake Falter, a student at The Ohio State University in Columbus, testified that he purchased a MacBook Pro laptop computer in 2012 for $1,100.00 on Apple's website and that he used the computer primarily for school and had various notes and papers saved onto the computer's hard drive. After a year of use, the "T" button became unattached and was no longer fixed onto the computer's keyboard.

{¶4} On October 11, 2013, Falter left his laptop in the living room of the townhouse where he lived with three other roommates before leaving to go out with friends. He did not notice that his computer was missing until the following Sunday, October 13, when he needed it to work on homework for class. While Falter did not have a password on his computer, he did install a program, "Prey", that sends a report via electronic mail that gives the location, I.P. address, and other information of a registered device once it is reported stolen on the program's website. When Falter received the report, it indicated that the laptop was located at an address assigned to MicroLink Computer Outlet, a store located in Mentor, Ohio. He contacted the Mentor Police Department that evening, who advised him that he would first have to file a report with the Columbus Police Department, which he did the following day, Monday, October 14, 2015. Falter also provided the police with the computer's serial number, which was labeled on the box the computer came in.

{¶5} Falter further testified that his father purchased the laptop back from MicroLink a few days later for $275.00. When he was able to look it over after it came back into his possession, there was a different user name on the computer, "Dave

2

Dietz", but it did not have a password. Some of the documents he had saved onto the computer were also missing.

{¶6} Officer Curt Davis of the Mentor Police Department testified that he spoke with Falter on the evening of October 14, 2014. After writing down the information provided by Falter, Officer Davis travelled to MicroLink and spoke with the owner, Ziad Ibrahim. Ibrahim stated that he had purchased the laptop from an individual the previous day at approximately 1:00 in the afternoon that he was able to identify as appellant. Officer Turek, an evidence tech who arrived at the location shortly thereafter, took photos of the computer with the matching serial number. In addition, Officer Davis was provided with all of the business records kept by Ibrahim from his purchasing the laptop from appellant as well as the surveillance footage that had recorded the transaction as it took place.

{¶7} Ziad Ibrahim testified appellant entered his store and stated that he was interested in selling the MacBook Pro he was holding because he had purchased a new one. After he turned the laptop on to inspect it, appellant entered the password to log on. Ultimately, Ibrahim concluded that the computer was in nice condition and offered to purchase it from Skaggs for $275.00, which he accepted. As per his usual business practice, Ibrahim entered appellant's driver's license information into his computer as well as a description of the MacBook computer. Ibrahim further remarked that, while he did find it unusual that appellant's license indicated that he had a Columbus address, appellant informed him that he had just moved to Cleveland with his girlfriend on Abbey Rd., which Ibrahim notated in his records.

{¶8} Sebastian Cassius testified next for the state and identified himself as a Geek Squad manager at Best Buy who oversees various departments within the store.

3

He indicated that Falter did own an Apple MacBook Pro based on information previously provided to him and that, based on the computer's model number, it still had a selling price of $1,099.99 as of January 16, 2015.

{¶9} Detective Mike Malainy of the Mentor Police Department testified he was approached by Officer Davis in the detective bureau on the evening of October 14, 2013 and was asked if he could assist him in recording a phone call. From the information collected by Officer Davis, Detective Malainy called the number and left a message with appellant's girlfriend for him to call back, which appellant did a few minutes later. Detective Malainy informed appellant that their conversation was being recorded and asked him about how he came across the MacBook Pro computer.

{¶10} On the recording, appellant informed Detective Malainy that he purchased the laptop from an individual on Saturday morning outside a hotel near Ohio State Route 161 in Columbus for $150.00. Appellant indicated the individual knew the password for the computer and that he was selling the computer in order to buy a new one. Appellant also asked if the laptop was stolen prior to purchasing it, which the individual denied. Appellant explained to Detective Malainy that, while he had all intentions of keeping the computer, the brakes on his vehicle were starting to fail while travelling to visit a friend in Euclid. As he did not have the money to get the brakes repaired, he sold the computer to MicroLink and used the money from the sale to purchase the parts. Appellant also told the detective he was with two friends who may have witnessed the transaction between him and the other individual at the hotel, but appellant did not provide him with their contact information. And appellant did not provide Detective Malainy with any sales receipts for car parts.

4

{¶11} When the state rested, the defense made a Crim.R. 29 motion for acquittal, which was denied. A second motion was requested prior to closing arguments, which was also denied. A short time after being released for deliberations, the jury returned a guilty verdict on the sole count in the indictment; it further found that, per the instructions, the property at issue was worth at least $1,000, but no more than $7,500.

{¶12} At appellant's sentencing hearing, the state presented several factors that showed that recidivism would be likely for appellant: he committed the offense at issue a month after being released on bond for a separate criminal case in Franklin County; had a history of juvenile adjudications in addition to having been found guilty for nearly a dozen other offenses as an adult, including possession of stolen property; and had been convicted of drug possession, possession of drug abuse instruments, and paraphernalia since committing this offense. The state also noted appellant was currently serving his sixth prison sentence and recommended that appellant be sentenced to twelve months to be served consecutively to the prison sentence he was currently serving.

{¶13} Appellant was ultimately sentenced to eleven months, to be served consecutively to his current prison sentence, and restitution in the amount of $275.00, the amount Falter had to pay to get his computer back. Appellant timely appealed and asserts three assignments of error. As they are related, we shall address appellant's first and second assignments of error together, they read:

{¶14} "[1.] The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence

{¶15} "[2.] The trial court erred to the prejudice of the Defendant-Appellant in denying his motion for Acquittal made pursuant to Crim.R. 29(A)."

5

{¶16} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi* 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9 (11th Dist.).

{¶17} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994).

{¶18} Appellant was convicted of receiving stolen property, in violation of R.C. 2913.51(A), which required the state to prove, beyond a reasonable doubt, he "receive[d], retaine[d], or dispose[d] of property [belonging to Jake Falter] knowing or having reasonable cause to believe that the property ha[d] been obtained through [the] commission of a theft offense."

{¶19} There was no dispute that Falter's computer had been stolen. It was also undisputed that appellant received, retained, and/or disposed of the computer. Appellant's arguments therefore concentrate on whether he had "reasonable cause to believe" the computer was stolen. Appellant offers various benign explanations relating to the circumstances of his purchase to rebut the state's circumstantial case. In

6

particular, he maintains his purchase of the computer in a "shady" location,[1] for less than it was worth, with a lack of accessories does not necessarily imply he should be on reasonable notice that it was stolen.

{¶20} Circumstantial evidence involves evidence not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established. *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). An inference is "a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven." *State v. Nevius*, 147 Ohio St. 263 (1947). It therefore follows that when circumstantial evidence forms the basis of a conviction, that evidence must establish collateral facts and circumstances, from which the existence of primary facts may be rationally inferred according to common experience. *Windle*, *supra,* at ¶34. Circumstantial evidence is accorded the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

{¶21} The jury heard appellant's rebuttal arguments to the state's evidence at trial. The jury, as the sole judge of the weight of the evidence, was free to accept or reject appellant's version of events. *See, e.g., State v. Taylor*, 11th Dist. Ashtabula No. 93-A-1796, 1994 Ohio App. LEXIS 2655, *5 (June 17, 1994). With this in mind, the "shady" location of the purchase, the lack of accessories, and the relatively-low purchase price provided the jury with a rational and persuasive foundation to support the conclusion appellant had reasonable cause to believe the computer was stolen.

---

1. Appellant takes issue with the state's characterization of the area of Columbus in which he purchased the computer as "shady." Appellant, however, used this word to characterize the location during an interview with Detective Malainy.

{¶22} Appellant, however, underscores he performed the same inquiries as Ibrahim to ascertain whether the computer was stolen; to wit, he notes he asked the seller if it was stolen, who purportedly responded in the negative. And, when the seller produced the password, he felt satisfied the computer was not stolen. In the abstract, these factors provide some basis for the conclusion that one could reasonably purchase the computer without serious suspicion or doubt that it was obtained through theft. When considered in light of other surrounding circumstances, however, they do not negate the inference that appellant had reasonable cause to believe the computer was obtained through theft.

{¶23} First of all, the circumstances surrounding appellant's purchase of the computer and Ibrahim's purchase were different. Appellant purportedly paid only $150 for the computer and the transaction took place, by appellant's admission, in a "shady" part of a large city. Ibrahim, a business owner who purchases and sells computers, paid $275 after researching what similar models are being sold for on Ebay. He further obtained appellant's identification and recorded his personal information pursuant to his business protocol. Although appellant, like Ibrahim, may have asked his seller whether the computer was stolen, other salient features of the purchases were entirely different.

{¶24} And, in any event, the similarities between the inquiries posed by appellant and Ibrahim do not serve to exculpate appellant or undermine the inference that appellant had reasonable cause to believe the computer was stolen. Simply because Ibrahim was not charged in the case does not support the inference that appellant had no reasonable basis to believe the machine was obtained by theft.

{¶25} Furthermore, there was evidence presented that the computer, while in Falter's possession, was not "password protected." There was also evidence adduced

8

at trial that installing a password is not difficult and can be accomplished without any specialized computer training. These points, taken in conjunction with the circumstantial evidence discussed above, demonstrate the evidence militated in favor of and not against a conviction.

{¶26} Given the circumstances of this case, we conclude there was sufficient, persuasive evidence to support appellant's conviction for receiving stolen property.

{¶27} Appellant's first and second assignments of error lack merit.

{¶28} Appellant's third and final assignment of error provides:

{¶29} "The trial court erred by sentencing the defendant-appellant to a term of imprisonment contrary to statute and where its findings were not supported by the record."

{¶30} Appellant contends the trial court's sentence of 11-months imprisonment, to be served consecutively to a sentence he was already serving, was contrary to law. We agree.

{¶31} This court reviews felony-sentencing appeals using the standard set forth under R.C. 2953.08(G). *State v. Hettmansperger*, 11th Dist. Ashtabula No. 2014-A-0006, 2014-Ohio-4306, ¶14. R.C. 2953.08(G) provides, in pertinent part:

> {¶32} (2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

> {¶33} The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

9

**{¶34}** (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶35}** (b) That the sentence is otherwise contrary to law.

**{¶36}** R.C. 2929.14(C)(4) governs the imposition of consecutive felony sentences. It provides:

**{¶37}** (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶38}** (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶39}** (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶40}** (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

**{¶41}** In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37, the Ohio Supreme Court held:

**{¶42}** In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary

10

findings can be found in the record and are incorporated into the sentencing entry.

**{¶43}** "Failure to make the R.C. 2929.14(C)(4) findings at the sentencing hearing and incorporate them in the judgment entry of sentence renders the sentence contrary to law." *State v. Purtilo*, 11th Dist. Lake No. 2015-L-003, 2015-Ohio-2985, ¶17.

**{¶44}** Here, the trial court ordered appellant to serve an 11-month prison term consecutively to a term he was already serving in Cuyahoga County. The trial court, however, failed to make the necessary R.C. 2929.14(C)(4) findings at the sentencing hearing; moreover, the statutory findings were also absent from the court's sentencing order. Appellant's sentence is therefore contrary to law. *See Purtillo*, *supra* (reversing a sentence where trial court failed to make findings under R.C. 2929.14(C)(4) when it ordered term of imprisonment to be served consecutively to a sentence from a separate case).

**{¶45}** Appellant's third assignment of error has merit.

**{¶46}** For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed in part, reversed in part, and remanded for resentencing.

DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

11