[Cite as *State v. Tate*, 2016-Ohio-7149.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-L-120** |
| DAVID L. TATE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 15 CR 000085.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, *Karen A. Sheppert* and *Teri R. Daniel,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*David L. Tate,* pro se, PID: A673-337, Lake Erie Correctional Institution, P.O. Box 8000, 501 Thompson Road, Conneaut, OH 44030. (Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, David L. Tate, appeals from the judgment of the Lake County Court of Common Pleas, convicting him on two counts of trafficking in heroin, third- and fourth-degree felonies, in violation of R.C. 2925.03(A)(1). We affirm.

{¶2} This matter arose from a narcotics investigation of which appellant was the target. Two controlled buys of heroin took place in Mentor, Ohio, one on November

11, 2014 and one on December 16, 2014. Both buys were made by confidential informant, S.B.

{¶3} In the fall of 2014, S.B. and a friend were stopped by law enforcement in Cleveland, Ohio after purchasing heroin. In order to avoid potential criminal charges, S.B. agreed to become a confidential informant. Cleveland detective, Bob Sauterer, contacted Detective Dennis Collins, of the Mentor Police Department, and mentioned a dealer named David Tate who lived in Mentor, Ohio. Detective Collins obtained a photograph of appellant. Later, S.B. confirmed the photo was a dealer who used the alias "Fresh." S.B. stated she had known "Fresh" for two years and he sold heroin in Mentor.

{¶4} Prior to the first controlled buy, S.B. contacted appellant and set up a time and location for the purchase. This call was not monitored. Once appellant agreed, she again phoned him to confirm the time, location, amount of heroin, as well as the cost. This conversation was recorded. She stated she wanted "two" for $280; appellant replied he would give her a little more for an "even three." They agreed to meet in 20 minutes at the designated location, a residence on 5645 Hillcrest Avenue, Mentor Ohio.

{¶5} Prior to the deal, S.B.'s person and vehicle were searched. She ultimately drove herself to the residence while Mentor Police Department officers situated themselves in the surrounding area. Detective Collins with another officer observed the Hillcrest home from a distance and, shortly after S.B. arrived, they observed appellant arrive at the home in a black Kia Soul. The officers photographed the vehicle, but were unable to see anything after it entered the driveway due to various obstructions. They later determined that appellant was not the owner of the Kia.

{¶6} S.B. stated appellant exited the Kia and entered her vehicle. He removed a piece of paper from her glove compartment, wrapped it around the heroin and exchanged the drug for the $300. As he exited the vehicle, S.B. is heard saying "Bye Freshy Fresh." Appellant did not respond and exited the vehicle. S.B. then returned to the station, officers recovered the recording device and the heroin; a subsequent search of her person and vehicle revealed no other contraband.

{¶7} S.B. later set up a second controlled buy on December 16, 2014 for one gram of heroin in exchange for $140. During the call, which was recorded, S.B. refers to appellant as "Fresh" in the course of negotiating where the purchase will occur. They ultimately agree to meet at the Hillcrest residence. Prior to initiating controlled buy, S.B.'s person and vehicle were again searched; she was given a digital recorder with a wireless microphone and $140 in marked bills.

{¶8} Upon her arrival at the Hillcrest address, S.B. observed several unnamed men standing outside. Appellant arrived shortly thereafter driving a Hyundai Sonata, his personal vehicle. Officers again were positioned near the residence and observed the vehicle as it passed them. Appellant entered the driveway and walked to S.B.'s driver-side window. During the exchange, S.B. referred to appellant as "Fresh." Appellant, however, did not acknowledge the statement. After the deal took place, S.B. returned to the Mentor police station, where she turned over the recording device and the heroin. A search of her person and vehicle revealed no additional contraband.

{¶9} After the second controlled buy, Detective Sergeant Richard Slovenkay and his partner followed appellant to a KFC restaurant. Appellant exited the vehicle and went inside. The officers observed appellant continuously glancing around in all

directions. Detective Sergeant Slovenkay characterized this behavior as a form of "counter surveillance," i.e., appellant was attempting to determine whether anyone had followed him. Appellant subsequently left the restaurant.

{¶10} The next day, Officer Don Swindell observed a silver Hyundai Sonata while on routine patrol, which matched the vehicle description in a recent advisory bulletin issued by the Mentor Police Department relating to appellant. Officer Swindell initiated a traffic stop. A canine search of the vehicle was performed but did not yield a positive alert. The officer's dashboard camera photographed the vehicle and its license plate.

{¶11} Based upon the controlled buys, appellant was indicted on two counts of trafficking in heroin, third- and fourth-degree felonies, in violation of R.C. 2925.03(A)(1). He entered pleas of "not guilty" at his arraignment. The matter proceeded to jury trial after which appellant was found guilty on both counts. The trial court sentenced him to consecutive prison terms of 30 and 15 months, for an aggregate term of 45 months imprisonment. This appeal follows.

{¶12} Appellant asserts the following as his sole assignment of error:

{¶13} "A.D. conviction was not supported pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2788.61 [sic.]"

{¶14} Under his sole assignment of error, appellant appears to assert the state failed to produce sufficient evidence to support his conviction beyond a reasonable doubt. We conclude the conviction was supported by sufficient, credible evidence.

{¶15} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense.

4

*State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

**{¶16}** When considering a challenge to the weight of the evidence, this court sits as a "thirteenth juror," weighing the evidence, considering the credibility of testimony, and evaluating whether the jury lost its way such that a manifest injustice occurred. *See e.g. State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Although this analysis requires an appellate court to consider whether the state met its burden of persuasion, where evidence is susceptible to more than one interpretation, a reviewing court must defer to the jury's findings. *Warren v. Simpson*, 11th Dist Trumbull. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, (Mar. 17, 2000), *see also State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 paragraph one of the syllabus (1967) (the jury is in the best position to assess the credibility of witnesses). In effect, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin, supra*, at 175.

**{¶17}** It is well settled that circumstantial evidence and direct evidence possess the same probative values. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991). Thus, proof beyond a reasonable doubt may be established by circumstantial evidence, direct evidence, or a combination of each. *Id.*

**{¶18}** Under his sole assignment of error, appellant makes various obscure allegations to support his position that there was insufficient, persuasive evidence to find him guilty.

5

{¶19} First, he alleges the jury was "dead locked" in its deliberations prior to returning a verdict of guilty. It is unclear how the jury's status during deliberations has any effect on the quality or quantity of the evidence produced by the state. Appellant's observation regarding the jury has no impact upon the evidence produced by the state.

{¶20} Next, appellant contends his conviction is suspect because Detective Collins only obtained a "fairly" good look at appellant prior to one of the buys. Although the detective could not independently confirm appellant was the dealer, S.B., the confidential informant, identified appellant with certainty. And even though S.B. was the only eye witness to testify that appellant was the dealer, the surrounding circumstances of the purchases demonstrate her testimony was credible.

{¶21} First, Detective Collins testified that when he was contacted regarding the use of S.B. as a confidential informant, the Cleveland officer provided him with both appellant's name and a photograph. When Detective Collins showed S.B. the photo, she positively identified appellant as "Fresh."

{¶22} Moreover, S.B. testified that she has known appellant approximately two years and identified him in open court as the individual who sold her the heroin during the two controlled buys. S.B. further testified she referred to him as "Fresh" or "Freshy Fresh" throughout their acquaintanceship. And during the audio recordings of the November and December the controlled heroin buys, S.B. can be heard referring to the dealer as "Fresh" or "Freshy Fresh."[1] S.B. testified she had been in his presence 20 or

---

1. Even though the dealer in the controlled buys never verbally acknowledges the name "Fresh," the dealer's failure to acknowledge the name "Fresh" is of little consequence. It is not uncommon for a person to be non-responsive to the use of one's name or nickname in the course of a face-to-face meeting. This may be especially so in the course of a would-be clandestine drug deal. And, in any event, the dealer's silence, under the circumstances, could be reasonably viewed as a simple acquiescence to that name.

6

30 times and spoke with him on the phone frequently. And she testified appellant drove a Hyundai Sonata and she commonly saw him at 5645 Hillcrest, Mentor Ohio, the residence where he regularly sold heroin.

{¶23} Furthermore, it is undisputed that appellant arrived at 5645 Hillcrest, a residence out of which heroin was trafficked, immediately after S.B. for each drug deal, and left shortly after she departed. While this does not provide direct evidence that appellant was the dealer, the jury could reasonably infer his presence at the location and the limited time he remained at the residence, provided additional circumstantial evidence of participation in the transaction.

{¶24} Moreover, Detective Brian Butler of the County Sheriff's Office testified that Lake County Jail inmates have the opportunity to provide a name identifying themselves to those they call outside the jail. The recording is connected with the inmate's unique personal identification number ("PIN") to which he or she is assigned during the booking process. The recording associated with appellant's PIN appeared to identify him as "Fresh." The recording was played twice to the jury.

{¶25} We acknowledge that S.B. may have had a self-serving motivation for assisting police and the prosecution; indeed, S.B. acknowledged she agreed to become a confidential informant because she was stopped in Cleveland after she and her roommate had purchased heroin. And Detective Dennis Collins testified that individuals who agree to work with police as confidential informants do so to avoid potential criminal charges. The jury was therefore fully aware of the circumstances surrounding S.B.'s role as a confidential informant and was in the best position to evaluate her testimony in light of her potential stake in the case.

7

{¶26} Appellant next asserts the evidence does not support his conviction because his DNA was not found on the evidence. Dr. Stephen LaBonne testified that he tested paper in which the heroin was wrapped during the transactions for touch DNA. The doctor testified that touch testing involves an attempt to detect skin cells transferred to an object. He further testified that he identified three contributors, one major, a woman, and two minor, both men. Dr. LaBonne testified he was not able to include appellant as a contributor of the more abundant of the two minor contributors, but asserted this does not mean appellant did not touch the paper. The doctor simply stated appellant may not have touched the paper, or he may have touched it and left too little DNA to be detected. Simply because appellant could not be positively identified does not undermine the state's theory of the case.

{¶27} Appellant next contends that Detective Collins testified that his supervisor, Detective Sergeant Slovenkay, inspected the substance purchased during one of the controlled buys and initialed the evidence on December 15, 2014. He asserts that if the Detective Sergeant Slovenkay did so, it would have been impossible for appellant to have purchased the same on December 16, 2014. A review of the proceedings demonstrates, however, that the evidence initialed on December 15, 2014 was the heroin purchased on November 11, 2014. Accordingly, we perceive no temporal irregularity in the manner the evidence was processed or the dates on which appellant was alleged to have sold S.B. the contraband.

{¶28} Given the evidence adduced at trial, we conclude there was sufficient, credible evidence to sustain appellant's convictions. We therefore hold the jury's verdict is consistent with the manifest weight of the evidence.

8

**{¶29}** Appellant's sole assignment of error is without merit.

**{¶30}** For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.